Vidal De Los Santos GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00478–CR.

Court of Appeals of Texas,
San Antonio.

March 2, 1983.

Rehearing Denied April 26, 1983.

Armando Barrera, Alice, for appellant.

Rolando Ramirez, Dist. Atty., Kenneth Oden, Jr., Asst. Dist. Atty., Alice, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

OPINION

DIAL, Justice.

This is an appeal from a conviction for unlawful possession of a firearm on premises licensed to sell alcoholic beverages, a violation of Tex.Penal Code Ann. § 46.02(c) (Vernon 1974).

Appellant filed a motion to suppress all physical evidence obtained as a result of an illegal search of his person. Evidence was developed at a hearing on the motion, and the trial court overruled the motion. At a subsequent trial before the court the parties stipulated that the testimony heard at the motion to suppress would be admitted as the evidence for the trial. Appellant was found guilty and sentenced to two (2) years' confinement in the Texas Department of Corrections, probated.

Appellant's sole ground of error complains that the trial court erroneously denied his motion to suppress evidence. Appellant contends the warrantless search of his person was without probable cause and is therefore unlawful. We disagree.

On June 19, 1982, appellant was attending a dance at the K.C. Hall in Premont,

Texas. The K.C. Hall is licensed to sell alcoholic beverages. City police officer Maldonado was on routine patrol to make a check of the dancehall. He was approached by a person that he did not know who told him that he had seen somebody carrying a pistol inside the dancehall. He gave the name of the appellant. "There was about two or three other persons that didn't identify him by name. They just said that they had seen somebody inside the dancehall with a gun." The officer asked the appellant to step outside "since they reported that he was carrying a weapon, and there was a pretty good-sized crowd, I felt it would be safer, you know, for anybody close-by." The officer explained the accusation to the appellant and "asked him if he'd be willing to let us check, you know, his boot where that person told us he was carrying a weapon," and the appellant refused. At this time Premont Chief of Police Gary Harmon arrived, having been informed by a dispatch on the air that there was a suspect in the K.C. Hall carrying a pistol. Officer Maldonado explained to Chief Harmon the information they had received and pointed out to him "there was a visible bulge, you could see a bulge in the boot, and his pants were draped over it." Chief Harmon searched the appellant's right boot. "I saw a slight bulge there that more or less insinuated that he had a (pistol) there." The officer removed a .38 Colt pistol from his right boot. Appellant properly objected to the introduction of the fruits of the search, and preserved his objection for review on appeal.

■■■ The issue in this case is not the existence of probable cause but rather the reasonableness of the search and seizure, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Keah v. State,* 508 S.W.2d 836 (Tex.Cr.App.1974). Though the Supreme Court in *Terry* advised that each case of this sort would have to be decided on its own facts, the holding in that case gives a usable standard here. Where a police officer observes conduct which leads him to reasonably conclude in the light of his experience that a crime may be taking place and that the person with whom he is dealing may be armed and presently dangerous, and the officer identifies himself as a policeman and makes reasonable inquiries that do not dispel his fear for safety, he is entitled for his and others' protection to conduct a carefully limited search of the suspect to discover weapons. *Terry v. Ohio, supra,* 392 U.S. at 30, 88 S.Ct. at 1884. The officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968). In our present case an officer with over twenty (20) years' experience had information that three or four persons had seen a suspect with a pistol in his boot, one of them naming the appellant, and he had the man he knew by that name before him at that moment with a bulge in his boot. The officer had reasonable grounds to believe the appellant was armed and dangerous and it was necessary for the protection of himself and others to take swift means to discover the true facts and neutralize the threat of harm.

The manner in which the search and seizure are conducted is, of course, as vital a part of the inquiry as whether they were warranted at all. *Terry v. Ohio, supra* 392 U.S. at 28, 88 S.Ct. at 1883. There is as much limitation on the scope of the search as on the pre-conditions upon its initiation. Here the officer merely reached for and removed the gun from the spot where there was an "insinuating" bulge. The officer confined the search strictly to what was minimally necessary to determine if appellant had a gun in his boot and to disarm him. He did not conduct a general exploratory search. He did not even conduct a "patdown" or frisk as would probably have been permitted under the facts of this case.

We are convinced of the correctness of our holding by the opinion of the Court of Criminal Appeals in *Martinez v. State,* 500 S.W.2d 151 (Tex.Cr.App.1973). There the appellant had entered the Indian Lounge in Fort Worth, an establishment apparently with clientele of similar gentility to those who patronized the K.C. Hall in Premont.

An officer noticed a bulge on the appellant's side which he later testified resembled a pistol. Appellant inquired who the officer was and was shown a badge and asked if he (appellant) wished to speak to the officer. Appellant responded in the negative. The officer then asked if the bulge was a gun he had under his belt. The appellant clamped his arm down against his left side and answered no, turning his back on the officer. The officer reached forward and pulled a pistol from appellant's belt. Appellant was then placed under arrest. The Court of Criminal Appeals concluded that the seizure was justified under the circumstances and under the rule in *Terry.* The facts in our present case are stronger than those in *Martinez* because in addition to the threatening bulge there was the information from several patrons who had seen the suspect with the pistol in his boot. The trial judge was correct in overruling the motion to suppress, and the appellant's ground of error is likewise overruled.

The judgment is affirmed.

TIJERINA, Justice, dissenting.

I respectfully dissent.

The record reveals that there was no evidence to show a suspicious circumstance, that appellant was intoxicated, under the influence of drugs, belligerent, that he resisted the detention and interrogation by the officer or that he made an attempt to escape.

Further, the detention, search and arrest of appellant without a warrant was not authorized by article 14.01 Tex.Code Crim. Pro.Ann. (Vernon 1967) because a felony or an offense against the public peace was not committed in the presence or within view of the police officer. Nor was the search and arrest authorized by article 14.03 Tex.Code Crim.Pro.Ann. (Vernon Supp.1981). Appellant was not found in a suspicious place and under circumstances which would reasonably show that he was guilty of a felony or breach of the peace, or that he threatened, or was about to commit some offense against the laws. Likewise, article 14.03 Tex.Code Crim.Pro.Ann. (Vernon 1966) does

not apply because it was not shown by *satisfactory* proof to police officer, by representation of a *credible* person, that a felony had been committed, that appellant was about to escape and that the police officer had no time to procure a warrant.

The State contends that the detention, search and arrest of appellant was lawful under the "stop and frisk" ruling of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the police officer observed suspicious activity, and believing a robbery was possible, stopped appellant for investigation and interrogation, and patted him down for weapons—he did not reach inside the man's coat or pockets, but patted him down from the outside only. The Supreme Court held that an officer having reasonable grounds to suspect that a crime was about to be committed may lawfully make such a stop. My interpretation of *Terry,* however, requires findings that (1) a suspicious person presents a danger to the officer or others; (2) the officer observes unusual conduct; (3) the officer has reason to anticipate criminal activity; and (4) the officer has reason to believe the person is armed and *presently dangerous.* If after interrogation there is nothing to dispel his reasonable fear for his own safety or the safety of others, only then will the officer be authorized to stop and frisk. In such circumstances, the officer is limited to a search of the outer clothing.

The State cites *Baity v. State,* 455 S.W.2d 305 (Tex.Cr.App.1970), which is not applicable since the detention in that case was at 4:00 a.m., the appellant was found in suspicious circumstances and the officer personally knew appellant's prior criminal record. In *Crawford v. State,* 544 S.W.2d 163 (Tex. Cr.App.1976), appellant was suspected of felony theft and she grabbed her purse and only after a brief struggle did the officer search and find the pistol. In *Mann v. State,* 525 S.W.2d 174 (Tex.Cr.App.1975), there were suspicious circumstances to support the informant's tip, and the appellants voluntarily gave evidence to police. In *Ablon v. State,* 537 S.W.2d 267 (Tex.Cr.App. 1976), the appellant was found in a high

crime area under suspicious circumstances and the officer for his *own safety* made a pat down search. The majority relies on *Martinez v. State,* 500 S.W.2d 151 (Tex.Cr. App.1973), which is also distinguishable. When the appellant in *Martinez* was questioned by an officer, he clamped his arm down against his left side, turning his back on the officer. This was the extra circumstance giving the officer reasonable suspicion that was not present in the case at bar.

In the instant case, one factor is missing, that extra circumstance to support the unidentified informer's tip and to justify the detention and search of appellant's person without a warrant. The test is whether at the moment the officers detained appellant, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that appellant had committed or was committing an offense. *See Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

The State has the burden of proving the legality of a warrantless arrest or search. *See Collidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Hooper v. State,* 533 S.W.2d 762 (Tex.Cr. App.1976). The State failed to develop their case as to the officers' apprehension, if any, as to their safety or the safety of others. Appellant was detained and removed outside of the dancehall for interrogation and still there was no unusual activity, no resistance by appellant and certainly no circumstance that would give the officers reasonable concern for their safety or a belief that a crime was about to be committed. The United States Supreme Court held in *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), that taking a suspect in custody for purposes of interrogation is in important respects indistinguishable from a traditional arrest. The *Terry* type intrusion of stopping and frisking was far less serious than this one, *which involved no potential threat.* "The *Terry* doctrine of 'reasonable suspicion' will not be extended to anything less than probable cause to detain or arrest." *Dunaway v. New York, supra.*

Additionally, the State failed to inquire as to practical circumstances which precluded the officer from obtaining a warrant of arrest or search warrant. "In order for a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time the arrest or search was made and the *existence of circumstances which made the procuring of a warrant impracticable,*" *Brown v. State,* 481 S.W.2d 106 (Tex.Cr.App.1972). Further, where probable cause is lacking, the challenged search will not be upheld merely because the exigencies of the situation precluded the obtaining of a warrant. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1967); *Brown v. State, supra,* 481 S.W.2d at 109.

Accordingly, I believe the court erroneously denied appellant's motion to suppress.