Affirmed and Majority and Concurring
Opinions filed May 6, 2010. 

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00353-CR

NO. 14-09-00354-CR

NO. 14-09-00355-CR



THE STATE OF
TEXAS, Appellant 

v.

LAVETTA RENEEE
WILLIAMS, Appellee 



On Appeal from
the County Court at Law

Brazoria County, Texas

Trial Court
Cause Nos. 168582, 168583, 168584



 

CONCURRING OPINION

I agree with the majority’s conclusion that the trial
court properly granted Williams’s motion to suppress.  I write separately to
provide a different analysis for the ultimate conclusion that the trial court
was correct.

Because Officer Duncan searched Williams without a
warrant, it was the State’s burden to prove that the search was reasonable
under the circumstances.  See Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).  When, as here, an officer has a reasonable suspicion that a
suspect may be armed and dangerous, he is entitled to conduct a limited search
for weapons to ensure the safety of the officer and those around.  See Terry
v. Ohio, 392 U.S. 1, 27 (1968); Carmouche v. State, 10 S.W.3d 323,
329 (Tex. Crim. App. 2000).  This is an extremely narrow exception, and the
search must “be strictly circumscribed by the exigencies which justify its
initiation.”  Terry, 392 U.S. at 26; see also Balentine v. State,
71 S.W.3d 763, 769–70 (Tex. Crim. App. 2002); Lippert v. State, 664
S.W.2d 712, 718 (Tex. Crim. App. 1984) (citing Ybarra v. Illinois, 444
U.S. 85, 93–94 (1979)).  The touchstone of any Terry analysis is
reasonableness, and we must balance each case individually to determine whether
the circumstances giving rise to the need to search justified the level of
personal intrusion.  See Michigan v. Long, 463 U.S. 1032, 1046, 1050–51
(1983); Carmouche, 10 S.W.3d at 329–30.

In this case, the trial court concluded that Officer
Duncan exceeded the scope of a pat down for weapons.  Although Terry
involved a pat down of outer clothing and is the typical way of conducting a
weapon search, such searches can be conducted in another manner if the
circumstances justify.  For example, if an officer has received specific
information about the location of a possible weapon, either through a tip or
from viewing a suspicious bulge, courts have allowed the officer to forgo a pat
down and take actions such as (1) requesting a suspect to lift his shirt,[1] (2)
reaching into a suspect’s boots or waistband,[2]
and (3) requiring a suspect to open his mouth.[3] 
Courts have also allowed weapon searches and seizures without a pat down first
if the officer demonstrated that a pat down would be ineffective or dangerous,
such as (1) if a suspect refused to get out of a car[4] or (2) if the
pat down would not have revealed sufficient information to allay the officer’s
suspicion because the suspect’s clothing was overly bulky or the suspect’s
boots were too hard.[5] 
In all of these cases, the circumstances justified something other than a
traditional pat down.  Cf. Sibron v. New York, 392 U.S. 40, 65 (1968)
(holding that reaching into pockets without first conducting a pat down search
was improper under the circumstances).

The difficulty in making such an assessment of the
search in this case is the state of the record.  The written record is unclear or
silent regarding several critical items, including: 

·       
Why did Officer Duncan think a pat down would have been
ineffective?  Officer Duncan testified that he was concerned that Williams
might have had something concealed in her bra that might not have readily been
felt during a typical pat down.  He stated that Williams’s bust size was “above
average,” but that does not explain why he thought she could have hidden a
steak knife in her bra or that a pat down would not have revealed some
indication of the knife, which could have justified additional searching.[6]  Although Officer
Duncan may have been hesitant to pat down a woman’s bra area, he did not
explain why a pat down would have been ineffective in this case had he done so,
and the State has cited no authority to show that it is inherently unreasonable
for a male officer to pat down a female suspect.

·       
Did Officer Duncan require Williams to reach under her dress to
lift her bra, or did she lift her bra by grabbing it through her dress?  The
record merely states that she had to “reach underneath,” but it is unclear if
she was reaching underneath her dress also or just her bra, and the parties
disagree in their briefs regarding the interpretation of the record on this
point.

·       
How much, if any, were Williams’s breasts or other body parts
exposed during the search?  The record is completely silent on this point. 
Though the State asserts in its brief that the search occurred in a place not
observable by the public, it is undisputed that it occurred in a convenience
store parking lot, and Officer Duncan testified in the hearing that Williams
was not later subjected to a full strip search because “we’re right there in
view of the public.”

The opinions and conclusions motivating police
conduct must be objectively reasonable and supported by facts articulated in
the record.  See Torres v. State, 182 S.W.3d 899, 902–03 (Tex. Crim.
App. 2005); Ford, 158 S.W.3d at 492–94; Grimaldo v. State, 223
S.W.3d 429, 433–34 (Tex. App.—Amarillo 2006, no pet.).  When a record is
undeveloped, either because the evidence is conclusory or because it is silent
on critical matters, a court cannot conduct a proper assessment of the reasonableness
of the officer’s actions.  See Ford, 158 S.W.3d at 493; Paulea v.
State, 278 S.W.3d 861, 865–66 (Tex. App.—Houston [14th Dist.] 2009, pet.
ref’d); Grimaldo, 223 S.W.3d at 433–34.  Based on this record, it is
impossible to balance the degree of invasion against the officer’s need to
search.[7]
 Because it was the State’s burden to show the search was reasonable and this
record does not have the information needed to assess the reasonableness of the
situation, the State has not met its burden.  See Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 494.  For these reasons, I conclude the trial
court did not err in granting Williams’s motion to suppress, and therefore I
respectfully concur.

 








                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Brown,
and Boyce. (Brown, J. Majority)

 









[1]
See United States v. Baker, 78 F.3d 135, 136, 138 (4th Cir. 1996)
(officer ordered suspect to lift shirt after observing triangular-shaped bulge
near suspect’s waistband); United States v. Hill, 545 F.2d 1191, 1192–93
(9th Cir. 1976) (officer ordered suspect to lift shirt when officer saw a bulge
at waistband and officer had report of bank robber in area who had displayed
gun in waistband to bank tellers).





[2]
See Adams v. Williams, 407 U.S. 143, 146–48 (1972) (officer who reached
into waistband had just been given information that suspect had gun there); Garcia
v. State, 649 S.W.2d 697, 697–98 (Tex. App.—San Antonio 1983, no pet.)
(officer removed gun from boot after informant told officer suspect had gun in
boot and officer observed a bulge there).





[3]
See Dixon v. State, 187 S.W.3d 767, 769–70 (Tex. App.—Amarillo 2006, no
pet.) (officer required suspect to open mouth after officer saw suspect raise
hands and then refused to face officer and spoke in mumbles through clenched
teeth).





[4]
See Adams, 407 U.S. at 146–48 (officer removed gun from suspect’s
waistband after receiving tip that gun was there and suspect refused to get out
of car to be patted down).





[5]
See Ex Parte Alabama, 678 So.2d 1049, 1051 (Ala. 1996) (officer reached
into jacket pockets when extremely bulky jacket made pat down ineffective); State
v. Vasquez, 807 P.2d 520, 524 (Ariz. 1991) (in banc) (officer reached into
hard leather boots rather than patting them down because pat down would not
have been effective); People v. Sorenson, 752 N.E.2d 1078, 1089 (Ill.
2001) (pat down of steel-toed hiking boots would not have revealed weapon).





[6]
See Balentine, 71 S.W.3d at 769–70; Lippert, 664 S.W.2d at 721; McAllister
v. State, 34 S.W.3d 346, 352–53 (Tex. App.—Texarkana 2000, pet. ref’d).





[7]
The State argues that because the trial court found a pat down would be
justified and the search here was less intrusive than a pat down, the search
should be upheld on that basis.  Williams argues that Officer Duncan would not
have been allowed to lift and shake her bra himself and that him requiring her
to do so does not render the search unintrusive.  All weapon searches of a
person involve some level of personal intrusion.  See Terry, 392 U.S. at
16–17.  Our task is to balance all the circumstances for reasonableness in each
case.  See Long, 463 U.S. at 1046, 1050–51; Carmouche, 10 S.W.3d
at 329–30.  A comparison to a traditional pat down would be but one factor in
our analysis, not an independent ground to justify the search.