**Millard Joseph KEAH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47510.**

Court of Criminal Appeals of Texas.

May 1, 1974.

William F. Kortemier, II, W. John Allison, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of possession of a dangerous drug; punishment was assessed at a fine of $125.00 and eighteen months confinement, probated.

Appellant complains of the admission into evidence of property seized by an alleged unreasonable search and seizure.

On November 5, 1971, the appellant and two companions were riding in a car driven by James D. Thiehoff. There was testimony that shortly after midnight Thiehoff braked the vehicle suddenly and made a sharp right-hand turn without signaling. Officers Holmes and Proctor were following in a police car and nearly collided with the turning vehicle. When the red lights were turned on, the car appellant was in started to pull over to the curb, and appellant was observed "lowering his left shoulder as if to pick something up or stick something up under the seat." After the vehicle stopped, appellant got out of the vehicle with his hand in his left pocket. When appellant withdrew his hand, Proctor saw a "large bulge" in the pocket. Three times he asked appellant what was in his pocket, to which no reply was made. Proctor then reached into the pocket and pulled out a plastic bottle and a cellophane wrapper, each containing tablets, later determined to be amphetamines. Appellant had been in the officer's presence approximately 30 to 45 seconds before the seizure took place. The seizure was made without appellant's consent, and prior to his arrest.

Appellant properly objected to the introduction of the fruits of the search, and preserved his objection for review on appeal.

We must review the reasonableness of the search and seizure in the instant case. The issue is not the existence of "probable cause," but rather the reasonableness of the search and seizure, as was noted in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, where the facts showed a stop and frisk. There it was stated:

"If this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether 'probable cause' existed to justify the search and seizure which took place. However, that is not the case. . . . [W]e deal here with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.

"Nonetheless, the notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant in this context." 392 U.S., at 20, 88 S.Ct. at 1879.

The test as stated in *Terry*, supra, is a two-staged inquiry:

" . . . [I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S., at 19–20, 88 S.Ct. at 1879.

In *Terry* the court held:

" . . . where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S., at 30, 88 S.Ct. at 1884.

This holding that in such circumstances a frisk would be constitutionally permissible is not a holding that a frisk of the outer clothing is the only permissible alternative to a full-blown search. A ruling on other specific situations and responses was specifically reserved:

"We need not develop at length in this case, however, the limitations which the Fourth Amendment places upon a protective seizure and search for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases." 392 U.S., at 29, 88 S.Ct. at 1884.

In the instant case there was no patdown or frisk, but rather an immediate reaching into appellant's pocket to retrieve the seized evidence. Terry v. Ohio, supra, does not hold that such action is prohibited, or that every such seizure must be preceded by a patdown or frisk. Indeed, the language of *Terry* suggests that in some situations an immediate seizure may be permissible where a patdown would not be:

"A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be *strictly circumscribed by the exigencies which justify its initiation.*" 392 U.S., at 25–26, 88 S.Ct. at 1882.

(Emphasis supplied)

In Martinez v. State, Tex.Cr.App., 500 S. W.2d 151, we held the seizure proper, cit-

ing Terry v. Ohio, supra, and this even though no patdown preceded the seizure. Thus we decline to hold that the immediate seizure of what reasonably appears to be a dangerous weapon without first conducting a thorough patdown is per se unreasonable and unconstitutional. The ultimate question is whether the scope exceeded that justified by the concrete factual circumstances of the individual case.

The State relies upon the theory that the seizure was justified because the officer "had probable cause to believe that the Appellant was carrying a prohibited weapon."

In Sibron v. New York, 392 U.S. 40, at 64, 88 S.Ct. 1912, at 1903, 20 L.Ed.2d 917, the Supreme Court said:

"In the case of the self-protective search for weapons, [the police officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Terry v. Ohio, supra."

In Terry v. Ohio, supra, 392 U.S. at 21, 88 S.Ct. at 1880, it was stated:

" . . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

And later:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, supra, at 27, 88 S.Ct. at 1883.

We have quoted extensively from Terry v. Ohio in order that the test may be more clearly understood. We must now ask what "specific and articulable facts" appear in the record which would warrant a self-protective search for weapons.

■ Proctor testified that before the car stopped he observed appellant "bend down, lowering his left shoulder as if to pick something up or stick something up under the seat." He later testified that it was at this point that he determined he was going to check out appellant. The other officer testified that he observed appellant "making a movement, bending forward in the car." We are unable to say that such a movement standing alone is sufficient to warrant a search. Brown v. State, Tex.Cr.App., 481 S.W.2d 106.

■ Finally, we reach the question of whether Proctor's observation of a "large bulge" in appellant's pocket and appellant's failure to reply to Proctor's question, standing alone or coupled with his prior observations, was sufficient to justify a self-protective search for weapons. At no point did Proctor testify that he thought the bulge was a weapon; at no point did he testify that he thought appellant was armed and dangerous; at no point did he testify that he believed his safety or that of others was in danger. When asked what he believed the bulge to be, he stated, "I did not know whether it would be a weapon or what it would be." When asked if he had any reason to believe appellant may have been a dangerous or suspicious character, he replied, "I did not know who he was." The only reason given by the officer for the seizure was: "I reached in his pocket to see what it was."

■ We do not hold that there is no situation where an officer may make an immediate seizure such as was here made. Cf. Martinez v. State, supra. We do hold that the record in this case does not reflect the officer possessed specific and articulable facts sufficient to warrant the conclusion that his safety or that of others was in danger. In fact, the record does not even reflect that Proctor made any such conclusion. The burden was upon the State to show the seizure here made was

not unreasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 433, 454–455, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971); United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). We do not hold the scope of the search was per se unconstitutional, but rather that the record does not disclose facts sufficient to justify the intrusion made.

Absent a showing that the search and seizure were reasonable, the evidence seized should have been excluded.

The judgment is reversed and the cause remanded.