Jonathan RAMSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 3-89-253-CR.

Court of Appeals of Texas, Austin.

April 3, 1991.

Rehearing Overruled May 8, 1991.

Gordon Karchmer, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and JONES and DAVIS,* JJ.

TOM G. DAVIS, Judge (Retired).

Appellant entered a negotiated plea of guilty to the offense of possession of a controlled substance, cocaine, in an amount less than 28 grams. *See* Tex. Health & Safety Code Ann. § 481.115(b) (1991) ("Texas Controlled Substances Act"). Punishment was assessed by the court at six years, probated, and a $1,000.00 fine. Appeal is limited to the court's action in overruling appellant's motion to suppress pursuant to the provisions of Tex.R.App.P. Ann. 40(b)(1) (Pamph.1990).

Officer Lutringer, the sole witness at the hearing, observed appellant traveling southbound on Westgate Boulevard in Austin "around 2 o'clock in the morning" on January 21, 1989. Lutringer noticed appellant's vehicle because of its speed. Believing that appellant was speeding, the officer turned his vehicle and followed appellant. Appellant cut through a business parking lot without bringing his vehicle to a stop and turned onto William Cannon Street. Lutringer activated his overhead lights and stopped appellant. Upon approaching the driver's side of the car, Lutringer shined his flashlight into the vehicle "about a foot behind the door" and observed appellant "reach over and pick up a maroon colored shaving kit ... and he threw it onto the floorboard onto the passenger side of the car." At Lutringer's request, appellant exited the vehicle, walked to the back of his car, and exhibited his driver's license. Lutringer described appellant as "disoriented," relating that "his eyes were glossy ... he sort of had a blank stare on his face. He was there, but he really wasn't. It was like he was under the influence of something."

Lutringer removed the shaving kit from the vehicle. Lutringer stated that he did this "for my safety. I assumed it might contain a weapon due to the size it was, and the reason that he picked it up and he had thrown it as to hide it from me." When Lutringer started to open the shaving kit, appellant said, "it was not his." The kit contained several plastic bags with pills and a white powdery substance. Subsequent examination of the contents resulted in charges being filed against appellant for possession of LSD (lysergic acid diethylamide) and cocaine.

Under cross-examination, Lutringer stated appellant was not under the influence to the degree that he would have arrested him for driving while intoxicated. In response to defense counsel's question as to what he would have done had he not opened the shaving kit and found drugs, Lutringer responded, "I would more than likely have issued him a citation ... for cutting corners across a private parking lot." On further cross-examination, the officer stated that he assumed appellant was under the influence of "some type of narcotic or drug or some medication." On redirect, the reason given for searching the shaving kit was, "I was just looking for weapons."

In his first point of error appellant contends the court erred in denying his motion to suppress evidence as the State failed to show the lawfulness of the initial detention.

Appellant concedes on appeal that there was probable cause to believe that a traffic offense occurred. However, appellant urges that the record does not affirmatively reflect that Lutringer was a peace officer, as that term is defined in Tex.Code Cr.P.Ann. art. 2.12 (Pamph.1991), so as to authorize stopping appellant for a traffic offense.[1] Appellant further argues that even if Lutringer was a peace officer, it was not shown that the action taken was within his jurisdiction.

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

1. A peace officer may arrest an offender without a warrant for a traffic offense, other than speeding, committed in his presence or within his view. Tex.Code Cr.P.Ann. art. 14.01 (1977). Tex.Rev.Civ.Stat.Ann. art. 6701d, § 188 (1977), makes it an offense to drive a vehicle through a parking lot without coming to a stop. Also

Throughout the hearing Lutringer was addressed as "officer" by both the prosecutor and defense counsel. Testimony reflects he was on patrol on the occasion in question, and that he activated his overhead lights to bring appellant to a stop. At the conclusion of the testimony the court stated, "I'm the judge of the facts. The facts are that the officer had a right to stop him."

Appellant's written motion to suppress and his argument advanced in support of the motion at the hearing failed to mention the basis he advances on appeal for suppression of the evidence. In order for an issue to be preserved for appeal, there must be a timely objection which states the legal basis for the objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Cr.App. 1990). Absent a statement of the legal basis for an objection, the trial court is deprived of an opportunity to rule on it and opposing counsel is denied an opportunity to remove the objection or supply other testimony. *Maynard v. State*, 685 S.W.2d 60, 65 (Tex.Cr.App.1985). Appellant's first point of error is overruled.

■ In point of error number two, appellant contends that the trial court erred in denying his motion to suppress evidence since the State failed to show adequate cause to search the container in appellant's vehicle.

Officer Lutringer stated that had he not found drugs he "more than likely" would have issued a citation for cutting corners. While the officer testified that he suspected there might have been drugs in the car, he stated his only reason for removing the shaving kit from the vehicle was "for my safety" and "looking for weapons."

We may conclude from the foregoing testimony that the search was not incident to an arrest for a traffic violation nor was it based on probable cause to believe that appellant possessed a controlled substance.

The legality of the search and seizure turns on whether it comes within the rule announced by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which allows a protective search for weapons in the absence of probable cause to arrest. The rationale of *Terry* is that it is unreasonable to deny a police officer the right to neutralize the threat of physical harm when he possesses an articulable suspicion that an individual is armed and dangerous. 392 U.S. at 24, 88 S.Ct. at 1881.

While *Terry* did not concern the search of an area beyond the person, *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), addressed the search of a vehicle for weapons during the lawful stop of a defendant. In *Long*, the supreme court stated:

Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover con-

---

prohibited is the driving of a vehicle across a parking lot for the purpose of making either a

right or left turn from one street to another street. *Id.*

traband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.

463 U.S. at 1036, 1050–51, 103 S.Ct. at 3473, 3481 (quoting *Terry*) (citations omitted).

Appellant urges that throwing the shaving kit to the floorboard was an ambiguous gesture as consistent with innocent activity as with criminal activity. Appellant suggests that his conduct comes within the ambit of what has been characterized as a "furtive gesture." Appellant cites a number of cases for the proposition that a "furtive gesture," in and of itself, does not establish probable cause to search. *See Keah v. State*, 508 S.W.2d 836 (Tex.Cr.App. 1974); *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.App.1974); *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972).

The defendants in *Brown* were arrested for robbery. The arresting officer had no specific knowledge connecting any of the defendants, whom he observed in an automobile, with the robbery, which had occurred twenty-four hours earlier. Before the arrest and search, the officer observed that the two men in the back seat turned, looked at him, and moved their shoulders. The officer concluded from these acts, and from the fact that the defendants were on a sparsely traveled street during the early hours of the morning, that the defendants were concealing firearms. The appellate court found this chain of inferences too tenuous to establish probable cause for an investigative stop. *Brown*, 481 S.W.2d at 112.

After the officer in *Keah* saw the defendant commit a traffic violation, the officer activated the red lights on the patrol car and observed the defendant "lowering his left shoulder as if to pick something up or stick something under the seat." When he exited his vehicle, the defendant had his hand in his pocket. When he removed his hand, the officer observed a "large bulge in his pocket." The opinion notes that the only reason given by the officer for the search and seizure was, "I reached in his pocket to see what it was." The officer did not testify that he thought the defendant was armed and dangerous. The court held that the circumstances related by the officer did not constitute "specific and articulable facts" that would warrant a self-protective search for weapons under *Terry*. *Keah*, 508 S.W.2d at 839.

In *Wilson*, two officers stopped the defendant for running a red light. Before the defendant's vehicle came to a stop, one officer observed the defendant make a move "with his right hand between the two seats." After the defendant walked to a position between defendant's car and the police car, where the other officer remained, the first officer searched the defendant's car and found a cigarette box between the bucket seats of the vehicle. The cigarette box contained three marihuana cigarettes. The first officer testified that he was not in fear of his life at the time he conducted the search, and that he had not seen the cigarette box prior to his search of defendant's vehicle. The court concluded the movement the officer saw the defendant make was not coupled with either reliable information or suspicious circumstances which would give rise to probable cause to search the vehicle. *Wilson*, 511 S.W.2d at 535.

The determination of the reasonableness of an officer's conduct in a protective search involves the balancing of the need to search against the invasion which the search entails. *Long*, 463 U.S. at 1047, 103 S.Ct. at 3479. The United States Supreme Court concluded in *Long* that the circumstances justified the two officers' reasonable belief that Long posed a danger if he were permitted to reenter his vehicle. *Long*, 463 U.S. at 1051, 103 S.Ct. at 3481.

After observing defendant Long's speeding vehicle swerve into a ditch, the officers stopped to investigate. The officers were met by Long at the rear of Long's car. Long appeared to be "under the influence

of something," and when the officers followed Long to the door of his car where he had started for his vehicle registration papers, the officers saw a hunting knife on the floorboard of Long's vehicle. After a "patdown search" of defendant's person failed to reveal anything, the officers noted an open pouch protruding from under the armrest of the front seat. Upon shining a light on the pouch, the officers determined that it contained what appeared to be marihuana. The trial court found that the leather pouch containing marihuana could have contained weapons.

The Supreme Court, noting that the danger to officers in an investigative detention of a suspect who has been removed from a vehicle is as great as that in a *Terry* scenario, stated:

> During any investigative detention, the suspect is "in the control" of the officers in the sense that he "may be briefly detained against his will...." Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation "at close range," when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger...."

*Long,* 463 U.S. at 1052–53, 103 S.Ct. at 3483 (emphasis original) (citations omitted).

We believe that there were circumstances in the instant case that were not present in *Wilson, Brown,* and *Keah,* which warranted the officer's belief that he was in danger. In *Wilson,* there was nothing, other than a movement of the suspect's arm, to create a suspicion that the defendant might possess weapons. In *Keah,* the officer did not testify that he thought the defendant was armed and dangerous. Rather, he stated that he had seen the suspect move his shoulders and after noting a bulge in the suspect's pocket, the officer reached into it. In *Brown,* the only suspicious circumstances occurred when two of the suspects turned, looked at the officers, and moved their shoulders.

In the instant case, the hour was late and, while there is no express evidence that the officer was alone, the record is devoid of any suggestion that there was anyone accompanying him or that any officers were backing him up in another vehicle. Officer Lutringer observed appellant throw the shaving kit to the floor at a time and in a manner that led the officer to believe that appellant was attempting to hide the kit from him. Lutringer concluded from appellant's actions that he was under the influence of drugs or narcotics. Unlike in *Brown* and *Wilson,* the officer had an opportunity to see the container appellant threw to the floor. The size of the shaving kit was such as to suggest to the officer that it might contain a weapon. Further, the appellant denied ownership of the shaving kit when Officer Lutringer started to open it. Moreover, appellant was standing at the back of his car, a position where the proximity for reentry was such that he might have access to any weapons in his vehicle, and pose a threat to the officer's safety.

Officer Lutringer was in possession of specific and articulable facts to warrant a reasonable belief that the defendant posed a danger if he were permitted to reenter his vehicle. The officer acted reasonably in taking preventative measures to ensure that there were no weapons within appellant's grasp before allowing appellant to return to his car. The balancing required

by *Terry* weighs in favor of allowing the officer to search the container that he had reason to believe appellant had tried to hide from the officer's view.

The judgment is affirmed.