IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-041-CR





MICHAEL MAURICE SPILLMAN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL

DISTRICT


NO. 90-088-K277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING



 





 This case presents a difficult search and seizure question. Appellant, Michael
Maurice Spillman, was indicted for aggravated possession of methamphetamine with intent to
deliver. Tex. Health & Safety Code Ann. § 481.112 (Pamph. 1992). Appellant waived his right
to a jury trial and pleaded not guilty before the district court. The court found appellant guilty
and assessed his punishment at life imprisonment and a $20,000 fine. 

 By agreement of the parties, appellant's motion to suppress evidence was tried at
the same time as the nonjury trial. In a single point of error, appellant asserts that the trial court
erred in admitting physical evidence obtained as the result of an allegedly illegal search and
seizure. We will affirm the judgment of the district court.

 The evidence adduced at the hearing on the motion to suppress evidence established
that in the early morning hours of December 17, 1989, shortly before 1:00 a.m., Texas
Department of Public Safety Trooper Lee Richards was working routine traffic enforcement,
alone, in a marked patrol car on Interstate Highway 35. Richards observed a red Ford Mustang
travelling southbound at "a very high rate of speed." Richards pulled onto the highway behind
the Mustang and clocked the vehicle's speed on radar at 77 m.p.h. At that point, he activated his
emergency lights to stop the vehicle.

 Richards approached the driver's side of the Mustang and identified himself. He
asked the driver to get out and step to the rear of the car, away from the lane of moving traffic. 
The driver and owner of the car was Lori Ploetz, who gave Richards her driver's license bearing
a San Antonio address. After Richards advised Ploetz she had been speeding, he followed
standard procedure: he inquired about her reason for speeding while he wrote the traffic citation. 
Richards testified that Ploetz told him, "she had been to Dallas to take [her] passenger's brother
home and then return that same day, referring to the passenger as Mr. Spillman." According to
Ploetz, Spillman's brother had flown into San Antonio for the Christmas holidays. When he did
not have a way back to Dallas, Ploetz agreed to drive him.

 Under the circumstances, including the late hour and the excessive speed, Richards
decided to speak to the passenger, appellant. Richards asked appellant the same questions he had
asked Ploetz. Appellant responded that they had been to Dallas "to visit friends." Richards asked
him "if they did anything else other than visit their friend," and appellant told him that they had
taken his brother from San Antonio to Dallas. When asked how his brother had gotten to San
Antonio, appellant said that "he didn't have any idea how he got there. . . . I guess he hitched,
hitched a ride."

 Richards noticed that appellant, still seated in the vehicle, visibly shook during their
conversation and avoided eye contact with him. Richards believed that appellant was shaking
from nervousness. The Trooper also noticed a bulge in the area of appellant's crotch. "The bulge
looked as if it was something hard and something square" that could not be "the result of some
natural part of his anatomy." Based on his observations and the passenger's and driver's
conflicting stories, Richard's suspicions were heightened that appellant had some foreign object
concealed in the crotch of his trousers. 

 Therefore, Richards went to his patrol car and called for backup. He then returned
to Ploetz and asked her if there was anything illegal in the vehicle, such as "narcotics, weapons
or stolen property." She responded, "No." Richards next asked if he could look inside the hatch-back vehicle. Ploetz "paused . . . looked down at the ground," and replied, "I would like to talk
to the passenger." Richards told her that, as the owner of the car, she had to decide. He again
asked if there was anything illegal in the car and, after another hesitation, Ploetz again replied,
"No." Richards again requested permission to search the vehicle and this time Ploetz reluctantly
agreed.

 At that moment, the requested backup officers arrived. Richards returned to the
passenger side of the vehicle, asked appellant to step out of the car, and conducted a "pat-down"
of appellant's body including the crotch area. Richards testified that he was searching "for
weapons"; that he conducted this frisk "for safety factors." Since appellant was not under
custodial arrest, Richards testified he did not want to handcuff the occupants while searching the
vehicle. However, "for his safety and the safety of the other officer[s]," Richards wanted to be
sure that there were no weapons on appellant's person. 

 While conducting the "pat-down," Richards felt "something hard in the crotch
area." He asked appellant to undo his pants, and as he did, Richards observed "a baggie or
something plastic inside his pants." Because of his experience with persons who transport
contraband, Richards believed he had discovered narcotics. He removed two baggies: one
contained "a brownish crystal-like substance" and the other contained "a greenish plant-like
substance," which Richards believed to be marihuana. A search of the Mustang revealed more
controlled substances and several items of drug paraphernalia. Lab analysis of the crystal-like
substance seized from appellant's person revealed it to be 51.36 grams of 81% pure
methamphetamine.

 At the outset, we note that appellant's sole point of error relates to the legality of
the frisk. Appellant concedes on this appeal that probable cause existed to stop the driver for the
traffic offense, i.e., speeding. He does not challenge the probable cause to search the vehicle
because Ploetz consented. Nor does appellant contest Richards' right to extract the baggies from
appellant's clothing once the frisk had given Richards probable cause to believe that appellant was
hiding something in his crotch area. Appellant's sole basis for review in this court is the legality
of the pat-down and frisk of the appellant after he had exited the vehicle.



DISCUSSION AND HOLDING


 Over twenty years ago in Terry v. Ohio, 392 U.S. 1 (1968), the United States
Supreme Court set forth a very narrow exception to the probable cause requirement in search and
seizure cases of this type. In Terry, a police officer suspected that Terry and two other men were
casing stores in Cleveland, Ohio, with the intent of burglarizing them. The officer detained the
suspects and asked them their names. Fearing that they might have weapons on their persons, the
officer patted down the outside of the suspects' clothing and found a pistol in Terry's overcoat
pocket. Terry challenged the legality of the search, alleging the absence of probable cause to
suspect that he had committed a crime. The Supreme Court sustained the validity of the search,
holding as follows:



[T]here must be a narrowly drawn authority to permit a reasonable search for
weapons for the protection of the police officer, where he has reason to believe that
he is dealing with an armed and dangerous individual, regardless of whether he has
probable cause to arrest the individual for a crime. The officer need not be
absolutely certain that the individual is armed; the issue is whether a reasonably
prudent man in the circumstances would be warranted in the belief that his safety
or that of others was in danger.



Terry, 392 U.S. at 27 (citations omitted).

 In subsequent cases, the Supreme Court has observed that the Terry rule recognized
that a balance must be struck between the privacy interest of individuals and the safety of police
officers in performing their duty. See, e.g., Ybarra v. Illinois, 444 U.S. 85 (1979); Adams v.
Williams, 407 U.S. 143 (1972). However, these same cases have stressed the fact that the "stop
and frisk for weapons" exception to the probable cause requirement in search and seizure cases
is extremely narrow. It is with these parameters in mind, that we examine the search in question.



1.  The State's Position.

 The State contends that the facts of this case fit within the Terry exception because
Trooper Richards testified that he conducted the frisk of appellant searching for "weapons." The
State relies primarily upon Pennsylvania v. Mimms, 434 U.S. 106 (1977), which it considers
controlling. In that case, the police stopped Mimms because the car he was driving had an
expired license plate. The officer in question asked Mimms to step out of the car and as he did
so, the officer observed a "bulge" under Mimms' jacket. The officer conducted an outer clothing
pat-down and discovered a loaded .38 caliber revolver. The United States Supreme Court upheld
the legality of the search in Mimms on the basis that under the particular facts and circumstances
of that case, the police officer's frisk was reasonable.

 We regard Mimms as instructive but not controlling. In Mimms, the bulge under
Mimms' jacket objectively appeared to be a weapon. The officer's search then confirmed his
subjective belief; Mimms was indeed carrying a weapon. In the instant case, there is no testimony
that Trooper Richards thought the "square and hard bulge" in appellant's crotch area was a
weapon. Instead, Trooper Richards testified that, based upon his experience in dealing with drug
investigations, the crotch area is a frequent location for hiding drugs because of its inaccessibility
in a routine "pat-down." Thus, unlike the Mimms case, there is objective evidence in this record
to infer that Richards did not believe the bulge to be a weapon. 

 A case from this Court that is similar in many respects to the instant case is Ramsey
v. State, 806 S.W.2d 954 (Tex. App. 1991, pet. ref'd). In Ramsey, an Austin police officer
observed a car speeding down a city street at about two o'clock in the morning. The officer
followed the car and noticed it cut through a business parking lot and, without stopping, turn onto
a major thoroughfare. The officer stopped the car, shined his flashlight into the vehicle as he
approached, and observed Ramsey throw a maroon-colored shaving kit onto the passenger-side
floorboard. After having Ramsey exit the vehicle, the officer searched the shaving kit, justifying
his search as necessary for his safety because the kit might have contained a weapon. Instead, the
shaving kit contained narcotics. In Ramsey, this Court observed:



Our past cases indicate then that protection of police and others can justify
protective searches when police have a reasonable belief that the suspect poses a
danger, that roadside encounters between police and suspects are especially
hazardous, and that danger may arise from the possible presence of weapons in the
area surrounding a suspect.


* * * * 



In any event, we stress that a Terry investigation, such as the one that occurred
here, involves a police investigation "at close range," when the officer remains
particularly vulnerable in part because a full custodial arrest has not been effected,
and the officer must make a "quick decision as to how to protect himself and others
from possible danger . . . ."



Ramsey, 806 S.W.2d at 956, 958 (quoting Michigan v. Long, 463 U.S. 1032, 1049, 1052 (1983)). 
We concluded that, under the particular facts in Ramsey, the search of both the passenger
compartment and the shaving kit was reasonable and did not constitute an illegal search. 
Appellant in this case seeks to distinguish Ramsey, in that the officer there was acting alone, while
in this case, backup officers were on the scene. This is obviously a distinction of some note, but
we do not regard it as dispositive. The Ramsey case is so significantly similar as to be persuasive.



2.  Appellant's Position

 Appellant contends that Trooper Richards was searching for "drugs," not for
"guns," at the time of appellant's arrest. Appellant takes the position that the traffic stop, though
lawful at its inception, quickly degenerated into a fishing expedition culminating in "drug
interdiction."

 Appellant relies primarily on the case of Keah v. State, 508 S.W.2d 836 (Tex.
Crim. App. 1974). In Keah, two police officers stopped a car after the driver made a sharp right-hand turn without signaling, almost causing a collision. Before the car pulled over and stopped,
the officers saw Keah, a passenger in the car, lower his shoulders "as if to pick up something or
stick something up under the seat." Once the car stopped, Keah got out and one of the officers
observed a "large bulge" in the left-hand pocket of his jacket. After the officer asked Keah three
times about the bulge in his jacket and Keah refused to respond, the officer reached into Keah's
pocket and found illicit drugs. The Court of Criminal Appeals held the search in Keah was illegal
because: "At no point did [Officer] Proctor testify that he thought the bulge was a weapon; at no
point did he testify that he thought appellant was armed and dangerous; at no point did he testify
that he believed his safety or that of others was in danger." Id. at 839 (emphasis added).

 We regard Keah as distinguishable from the facts of this case. Unlike Keah, at the
motion to suppress evidence hearing, Trooper Richards affirmatively testified that he conducted
his frisk of appellant to search for "weapons." Richards affirmatively testified in this record that
his search was conducted "for my safety" and "the safety of the other officer[s] that was out
there." Thus, the missing testimony that the Court of Criminal Appeals regarded as vitally
important in Keah was the very testimony given by Richards in the instant case.

 Appellant responds that Richards' testimony is pure "boilerplate"; that he did
nothing more than utter the magic words such as "weapons" and "personal safety," but the
objective facts indicate otherwise. Some of the objective facts at the scene of the search and
subsequent seizure support appellant's contention in this regard. Some of the objective facts do
not. 

 At a hearing on a motion to suppress evidence, the trial court is the sole judge of
the credibility of the witnesses and the weight to be given their testimony, and an appellate court
must defer to the trial court's findings of fact absent a clear abuse of discretion. State v. Nolan,
808 S.W.2d 556, 560 (Tex. App. 1991, no pet.); see also Duff v. State, 546 S.W.2d 283, 286
(Tex. Crim. App. 1977). Here it is obvious that the trial court believed Trooper Richards when
he stated that he conducted the pat-down frisk looking for weapons. We are not in a position to
second-guess the trial court's determination in this regard. See State v. Comeaux, 786 S.W.2d
480, 482 (Tex. App. 1990), aff'd, 818 S.W.2d 46 (Tex. Crim. App. 1991).

 Finally, appellant contends that even if this search passes muster under the Fourth
Amendment to United States Constitution, it violates Article I, section 9 of the Texas Constitution. 
In the recent case of Heitman v. State, 815 S.W. 2d 681, 690 (Tex. Crim. App. 1991), the Texas
Court of Criminal Appeals, in a search and seizure case, determined that a challenge made under
state constitutional law would not be foreclosed based upon corresponding cases construing similar
provisions of the United States Constitution. While the Texas Constitution may well offer broader
search and seizure protections than those of the United States Constitution, we believe that a
narrow exception for reasonable searches as countenanced by Terry v. Ohio should be applied to
search and seizure under the Texas Constitution. 

 We conclude that the search in this case does not offend state or federal
constitutional guarantees. Appellant's point of error is overruled and the judgment of conviction
is affirmed.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: February 26, 1992

[Publish]