NO. 12-00-00330-CR




IN THE COURT OF APPEALS

 



TWELFTH COURT OF APPEALS DISTRICT




TYLER, TEXAS


ROBERT EVANS RENO,

§

 APPEAL FROM THE THIRD

APPELLANT



V.

§

 JUDICIAL DISTRICT COURT OF



THE STATE OF TEXAS,

APPELLEE

§

 HENDERSON COUNTY, TEXAS

 

 Robert Evans Reno ("Appellant") pleaded guilty to the offense of possession of a controlled substance with intent to
deliver. The trial court assessed his punishment at fifteen years of imprisonment. Appellant requested, and was given
permission, to appeal the trial court's denial of his motion to suppress. We affirm.



Background

 In December of 1999, Henderson County deputy sheriff John Pippin ("Officer Pippin" or "officer") was dispatched to
check on a pickup truck parked at the end of a dead-end county road. Upon arriving at the location, Officer Pippin observed
a red Dodge pickup backed up to a pasture gate. It was occupied by two persons, the driver and owner of the vehicle, Keith
Baggett ("Baggett") and Appellant. When the officer exited his squad car, Baggett hurried toward him, at which time
Officer Pippin became alarmed. He ordered Baggett to stop, and patted him down for weapons. Finding none, he instructed
Baggett to stay at the front of the truck. Officer Pippin then went to the passenger side of the vehicle and observed
Appellant leaning forward in his seat, fidgeting, and fumbling around. The officer asked Appellant to raise both of his
hands, fearing that Appellant might have a weapon. Appellant raised his right hand, but did not raise his left, even after
several requests. Officer Pippin could see a black pouch in Appellant's left hand. When the officer asked Appellant to exit
the vehicle, Appellant threw the pouch across the cab. Appellant got out of the truck, at which point Officer Pippin could
see a hypodermic needle in plain view on the floorboard. The officer patted Appellant down for weapons, handcuffed him,
then put him in the back seat of the patrol car. Officer Pippin then spoke to Baggett and asked what was going on. Baggett
told the officer that he was paying Appellant back for working on his truck and filling it with diesel by driving him around. 
The officer gave Baggett his Miranda warnings, then asked to search his truck. Baggett agreed, saying that everything
belonged to Appellant. Officer Pippin proceeded to search the truck, first locating the black pouch, which he believed
might contain a small caliber handgun. When he opened the pouch, he discovered several plastic baggies filled with
methamphetamine or some other controlled substance. Officer Pippin also found a small film canister in the passenger
door. When he opened the canister, he found what he believed to be methamphetamine. He then placed Appellant under
arrest.

 Appellant was indicted for possession with intent to deliver a controlled substance, namely methamphetamine, in an
amount of four grams or more but less than two hundred grams. He filed a motion to suppress the evidence, complaining
that it was discovered pursuant to an illegal search, seizure and arrest. The trial court denied his motion and Appellant
requested permission to appeal the denial, which the trial court granted. This appeal followed.

 Standard of Review

 A typical motion to suppress case alleging a lack of reasonable suspicion or probable cause will be reviewed through a
bifurcated standard of review. Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997). We will give almost total
deference to a trial court's express or implied determination of historical facts, and review de novo the court's application of
the law of search and seizure to those facts. Id. at 88 n.3 & 90-91. 

 When the trial court fails to file findings of fact, as in the instant case, we view the evidence in the light most favorable to
the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State, 10
S.W.3d 323, 328 (Tex. Crim. App. 2000). The trial court is the sole judge of the credibility of the witnesses and the weight
to be given their testimony. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). An appellate court does not
engage in its own factual review, but merely decides whether the trial court's findings are supported by the record and
whether the court properly applied the law to the facts. Dean v. State, 938 S.W.2d 764, 768 (Tex. App.-Houston [14th
Dist.] 1997, no pet.).



Consent to Search

 Appellant complains in his first issue that the trial court erred when it admitted the narcotics into evidence because there
was no probable cause to justify the detention of Appellant and the warrantless search of the vehicle in which Appellant
was a passenger. We will first discuss Appellant's sub-issue in which he asserts that there was an unlawful search of the
vehicle because he did not personally consent to the search. 

 Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and
probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973);
Carmouche, 10 S.W.3d at 331. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary,
and 'voluntariness is a question of fact to be determined from all the circumstances.'" Ohio v. Robinette, 519 U.S. 33, 40,
117 S. Ct. 417, 421, 136 L. Ed. 2d 347 (1996)(quoting Schneckloth, 412 U.S. at 248-49, 93 S. Ct. at 2059). In order to be
valid, the consent must be shown to be positive and unequivocal, and without duress or coercion. Allridge v. State, 850
S.W.2d 471, 493 (Tex. Crim. App. 1991). Although the federal constitution only requires the State to prove the
voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and
convincing evidence that the consent was freely given. Carmouche, 10 S.W.3d at 331. If the record supports a finding by
clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding. Id. 

 A valid consent to search may be given not only by the defendant, but also by anyone who possesses common authority
over, or other sufficient relationship to, the premises or effects to be searched. United States v. Matlock, 415 U.S. 164,
171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Thus, the voluntary consent of a joint occupant of a residence (or vehicle) (1) is
valid against a co-occupant when the consent extends to areas of joint control and use. This is grounded upon the rationale
that any co-occupant has the right to consent to a search in his or her own right, and the other co-inhabitants have assumed
the risk that one of their number might permit a search of this common area. Id. at 171 n.7. Furthermore, a general consent
to search a vehicle extends to items and containers within that car. Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801,
1804, 114 L. Ed. 2d 297 (1991). 

Analysis

 Officer Pippin testified that the owner and driver of the truck told him that Appellant had earlier helped him fix his
vehicle. On the night in question, Appellant called Baggett and asked him to drive him around in exchange for the favor. (2) 
Officer Pippin asked Baggett if there was anything illegal, weapons or drugs, in the vehicle. Baggett failed to answer. 
When the officer asked Baggett if he could search the pickup, he said he could. Officer Pippin testified that he believed the
consent was freely and voluntarily given, that Baggett was not handcuffed, and that his consent was not coerced in any way.
(3) We hold that under these circumstances, a reasonable person would have felt he had the choice to withhold consent to
search. (4) Even assuming Appellant had an expectation of privacy in the car, Baggett's consent to search the vehicle and its
contents trumps this expectation. See U.S. v. Dunson, 940 F.2d 989, 995 (6th Cir. 1991). By leaving the pouch and canister
in the pickup, Appellant placed them within the scope of Baggett's general consent to search the car. But see Goodwin v.
State, 799 S.W.2d 719, 725 n.2 (Tex. Crim. App. 1990)(finding that a passenger had standing based on his claim to
ownership of "certain luggage" seized from the vehicle). Furthermore, the record does not show that Appellant ever
asserted an interest in the methamphetamine or the bag and canister which contained it. Therefore, based upon the record,
consent was given by one with authority to give it and it was given voluntarily, thus providing Officer Pippin justification
for the search. Accordingly, we hold that the trial court did not err when it denied Appellant's motion to suppress and 
admitted the contraband into evidence.



Encounter, Investigative Detention or Arrest

 Further, even had the trial court erred in finding knowing and voluntary consent by one with authority to give it, we hold
that the search was valid on other grounds. 

 The Fourth Amendment to the United States Constitution provides the following:



 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures
shall not be violated, and no warrants shall issue but upon probable, cause supported by oath or affirmation and particularly
describing the place to be searched, and the persons or things to be seized.





U.S. Const. amend. IV.

 Article I, section 9 of the Texas Constitution also provides certain guarantees from unreasonable searches and seizures, as follows:



 The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures and searches,
and no warrant to search any place or to seize any person or thing shall issue without describing them as near as may be,
nor without probable cause, supported by oath or affirmation.





Tex. Const. art. I, § 9. No evidence seized in violation of any laws or provisions of the United States Constitution or the
laws or provisions of the Texas Constitution shall be admissible in any criminal prosecution. Tex. Code Crim. Proc. Ann.
art. 38.23 (Vernon 1999).

 However, not all interactions between officers and citizens implicate the U.S. and Texas Constitutions. Terry v. Ohio, 392
U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n. 16, 20 L. Ed. 2d 889 (1968). There are three recognized categories of interaction
between the police and citizens: encounters, investigative detentions and arrests. Francis v. State, 922 S.W.2d 176, 178
(Tex. Crim. App. 1996) (Baird, J., concurring as to judgment, dissenting as to dismissal of review). Both an investigative
detention and an arrest involve a seizure of the citizen; therefore, a certain objective level of suspicion must be shown by
the officer to justify the seizure. Id. If the interaction involves an investigative detention, the officer must show reasonable
suspicion that the citizen is connected to criminal activity. Id. If the interaction is an arrest, the officer must show probable
cause to believe that the citizen has engaged in or is engaging in criminal activity. Id. But to engage in an encounter with a
citizen, an officer need not show any particular level of suspicion because the citizen is not under any obligation to continue
speaking with the officer. Id. "As long as the person to whom questions are put remains free to disregard the questions and
walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some
particularized and objective justification." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L.
Ed. 2d 497 (1980). An officer may approach a citizen, without reasonable suspicion or probable cause, to ask questions
and even to request consent to search. Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). A seizure occurs
only if a reasonable person would believe he was not free to leave and go about his business. California v. Hodari D., 499
U.S. 621, 628, 111 S. Ct. 1547, 1551-52, 113 L. Ed. 2d 690 (1991).

 An encounter becomes an investigative detention when a reasonable person would believe he or she was not free to leave,
and that person has yielded to the officer's show of authority or been physically forced to yield. Johnson, 912 S.W.2d at
236. An officer may briefly detain a person for investigative purposes if, under the totality of the circumstances, the officer
has a reasonable suspicion supported by articulable facts that the person detained is, has been or soon will be engaged in
criminal activity. Woods v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). In other words, the officer must have a
reasonable suspicion that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the
detained person with the unusual activity, and some indication that the activity is related to a crime. Smith v. State, 759
S.W.2d 163, 165 (Tex. App.- Houston [14th Dist.] 1988, pet. ref'd). Circumstances raising suspicion of illegal conduct
need not be criminal. Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The issue is not whether the
particular conduct is innocent or criminal but, rather, the degree of suspicion that attaches to particular noncriminal acts. 
Holladay v. State, 805 S.W.2d 464, 469 (Tex. Crim. App. 1991). At a minimum, however, the suspicious conduct must
differ sufficiently from that of innocent people under the same circumstances so as to clearly set the suspect apart from
them. Crockett, 803 S.W.2d at 311. 

 Both an arrest and a temporary detention for purposes of investigation involve a restraint on a person's liberty of
movement. Whether a particular seizure is an arrest or merely a temporary detention is a matter of degree, and turns on
such factors as the length of the detention, the amount of force employed, and whether the officer actually conducts an
investigation. See Woods v. State, 970 S.W.2d 770, 775 (Tex. App.-Austin 1998, pet. ref'd). There is no bright-line test to
distinguish an arrest from a detention. See Rhodes v. State, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997) (handcuffing is
not always equivalent to arrest). A helpful discussion of when handcuffing constitutes arrest is contained in Nargi v. State,
895 S.W.2d 820 (Tex. App.-Houston [14th Dist.] 1995, no pet.):



 Although restraining an individual generally constitutes arrest, handcuffing before questioning alone (or even ordering a
suspect to lie down) does not necessarily convert an investigative detention into an arrest. The characterization of a stop as
an arrest or merely detention based on restraint of movement is made in light of all the facts and circumstances. Factors
taken into account include: the need to gain control over the suspect; the use of force, including the display of weapons; use
of handcuffs; length of the detention; admonitions of the detaining officer; reasonable perception of the detainee as to his
status; movement of the detainee; the overall intrusiveness of the detention; and the opinion of the detaining officer as to
the status of the detention. 





Id. at 822 (citations omitted).

Analysis

 When Officer Pippin drove to the dead-end road and stopped to talk to the occupants of the vehicle, this constituted an
encounter. However, when Baggett jumped out of the vehicle, while Appellant stayed in the truck, the officer developed a
reasonable suspicion that he was being distracted from Appellant's actions. When Officer Pippin walked to the passenger
side of the vehicle, he saw Appellant fumbling around in front of him. When asked to put his hands on the dash, Appellant
placed only his right hand on the dash. The officer could see a black bag in Appellant's other hand. Appellant continued to
refuse to put his left hand on the dash. When Officer Pippin asked Appellant to exit the vehicle, Appellant threw the black
bag across the cab. When Appellant was out of the vehicle, the officer saw a hypodermic needle in plain view. (5) By this
point, given the totality of the circumstances, it was reasonable for Officer Pippin to suspect that Appellant was engaged,
had been engaged, or was about to engage in criminal activity. He was therefore justified in detaining Appellant for further
investigation.

 Having decided that the officer's initial approach was an "encounter," which soon escalated into an investigative detention,
we must next decide if and when an arrest occurred. Considering all the circumstances shown by the record, we conclude
that Appellant was merely detained for investigation until contraband was discovered. Appellant had been in the officer's
presence for only a few moments, and the officer was actively investigating the situation before him. Officer Pippin
himself did not consider the restraint of Appellant as an arrest, but as a detention for purposes of searching the vehicle for
weapons. The officer testified that he did not place Appellant under arrest until he discovered illegal drugs. We hold,
therefore, that Appellant was legally detained for investigative purposes at the time he was handcuffed and placed in the
back of the squad car.



Terry Frisk and Search

 Before an officer places a hand on a subject in search of anything, he must have constitutionally adequate grounds for
doing so. Lippert v. State, 664 S.W.2d 712, 721 n.12 (Tex. Crim. App. 1984). Law enforcement personnel may conduct a
limited search for weapons of a subject's outer clothing during an investigative detention, where an officer reasonably
believes that the person is armed and dangerous. Terry, 392 U.S. at 27, 88 S. Ct. at 1883; Carmouche, 10 S.W.3d at 328. 
The officer, however, does not have to be absolutely certain that the individual is armed; rather, the standard is whether a
reasonably prudent person in the same circumstances would be warranted in the belief that his or her safety is in danger. 
Maldonado v. State, 853 S.W.2d 746, 748 (Tex. App.-Houston [1st Dist.] 1993, no pet.). Guidelines for determining the
validity of the Terryfrisk include (1) whether the subject attempts to flee or makes furtive gestures; (2) whether the subject
moves suddenly toward a pocket or other place where a weapon might be concealed; (3) whether the subject makes threats
or resists police officers; (4) whether the subject is committing or about to commit a crime; and (5) whether the subject
appears to be under the influence of drugs or alcohol. See Lippert, 664 S.W.2d at 721; see also Illinois v. Wardlow, 528
U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000)(finding nervous, evasive behavior a pertinent factor in
determination of reasonable suspicion). The purpose of a limited search is not to discover evidence of a crime, but to allow
the peace officer to pursue investigation without fear of violence. Wood v. State, 515 S.W.2d 300, 306 (Tex. Crim. App.
1974). A Terry frisk is justified only where the officer can point to specific and articulable facts which reasonably lead him
to conclude that the person might possess a weapon. Terry, 392 U.S. at 26-27, 88 S. Ct. at 1882-83.

 The scope of a Terry search has been extended to the passenger compartment of an automobile, but it is limited to those
areas in which a weapon may be placed or hidden. Michigan v. Long, 463 U.S. 1032, 1050-51, 103 S. Ct. 3469, 3481, 77
L. Ed. 2d 1201 (1983); Goodwin v. State, 799 S.W.2d 719, 728 (Tex. Crim. App. 1990). This does not mean police may
conduct automobile searches whenever they make an investigative stop; but an officer may conduct a protective search of a
detainee's automobile when the officer has a reasonable belief, based on specific and articulable facts, that the detainee may
pose a danger to the officer or to others. SeeGoodwin, 799 S.W.2d at 728. 

Analysis

 In the instant case, the hour was late, the area of the encounter was dark and isolated, and the officer was alone with two
unknown persons. Officer Pippin observed Appellant throwing a black bag across the cab of the truck, attempting to hide it
from him. See Ramsey v. State, 806 S.W.2d 954, 958 (Tex. App.-Austin 1991, pet. ref'd) (when defendant's car was
stopped by police and defendant threw a shaving kit on the floor of the car, it justified a self-protective search of the kit for
weapons). When Officer Pippin removed Appellant from the vehicle, he saw the hypodermic needle and concluded from
Appellant's actions and the presence of the drug paraphernalia, that he was under the influence of drugs or narcotics. The
size of the black bag was such as to suggest that it might contain a weapon. Further, Appellant's cohort was unrestrained,
standing at the front of the pickup, a position where the proximity for reentry was such that he might have access to any
weapons in the vehicle, and pose a threat to the officer's safety. We conclude these are specific, articulable facts sufficient
to constitute reasonable suspicion to justify the Terry frisk and search.



Probable Cause to Search

 It is established in case law that an officer must have probable cause to arrest a defendant without a warrant. See
Anderson v. State, 932 S.W.2d 502, 506 (Tex. Crim. App. 1996)(citing New York v. Harris, 495 U.S. 14, 110 S. Ct. 1640,
109 L. Ed. 2d 13 (1990)). Probable cause for an arrest exists where, at that moment, facts and circumstances within the
knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably
prudent person in believing that a particular person has committed or is committing a crime. See Smith v. State, 739
S.W.2d 848, 851 (Tex. Crim. App. 1987). Once an officer has probable cause to arrest, he may search the passenger
compartment of a vehicle as a search incident to that arrest. See Williams v. State, 726 S.W.2d 99, 101 (Tex. Crim. App.
1986)(citing New York v. Belton, 453 U.S. 434, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)). It is irrelevant that the arrest
occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the
search. Williams, 726 S.W.2d at 101.

Analysis

 When Officer Pippin discovered drugs in the black pouch during his valid Terry search, he then had probable cause to
arrest Appellant. Since Appellant was already detained, however, the officer decided to continue searching the vehicle, this
time for illegal contraband. It was during this search that he discovered the drugs in the film canister. We hold that the
drugs in the film canister were seized during a valid search incident to arrest.

In Summation

 We conclude, after a review of the record, that there was an encounter when Officer Pippin drove down the dead-end road
and got out of his squad car in order to inquire of the occupants' purpose for sitting in their vehicle, late at night, with their
lights and engine off. 

 The encounter soon escalated into an investigative detention. Just as soon as the driver of the vehicle saw Officer Pippin
exit his vehicle, he hurriedly advanced toward the officer, alarming him. From his experience as a law enforcement officer,
Officer Pippin believed that the driver may have met him in order to divert his attention from the actions of the vehicle's
passenger. The officer could see the passenger ducking down and fumbling around inside the cab. Also, the driver of the
vehicle seemed very nervous. When the officer approached the passenger side of the vehicle, the passenger was still
leaning forward and fumbling around. Officer Pippin asked Appellant to raise both hands, in order to determine if he was
holding a weapon. Appellant raised his right hand, and placed it on the dash, but refused to raise his left hand. Officer
Pippin could see a black pouch in Appellant's left hand. Appellant threw the pouch across the seat to the other side of the
cab. Appellant seemed to the officer to be nervous and fidgety, and possibly high on something. All of these circumstances
created reasonable suspicion that Appellant was engaged, had been engaged, or would be engaged in criminal activity. 
After reasonable suspicion had been formed, Officer Pippin asked Appellant to exit the vehicle, at which time he
handcuffed him pursuant to an investigative detention. 

 Because of Appellant's furtive gestures, because he was apparently under the influence, because there was possible drug
paraphernalia (the syringe) in plain view, and because of his suspicious behavior in throwing the black pouch, Officer
Pippin became concerned for his safety. At this time, he conducted a valid Terry frisk. No weapons were found on
Appellant's person, but Officer Pippin believed that the black pouch could contain a weapon. Because the driver of the
vehicle was not restrained, and could easily navigate the distance to the cab of the pickup, Officer Pippin was authorized to
conduct a Terry search of the vehicle. In doing so, he opened the black pouch and discovered illegal drugs. 

 Once the drugs were discovered, Officer Pippin had probable cause to search the rest of the vehicle incident to arrest. 
During this search, he found a film canister filled with methamphetamine. He then arrested Appellant based upon probable
cause. Thus, there was an encounter, reasonable suspicion, an investigative detention, a Terry frisk and search, probable
cause, and a search incident to arrest, and an arrest. We conclude, therefore, that the trial court did not err when it admitted
evidence of this search. We overrule issue one.



Other Issues Presented

 In issues two, three, and four, Appellant complains of insufficient evidence and uncorroborated accomplice witness
testimony. However, because Appellant entered into a negotiated plea, he is authorized to appeal only those issues for
which the trial court gives him permission, or of a jurisdictional defect. Tex. Code Crim. Proc. Ann. art. 26.13(3) (Vernon
2001); Tex. R. App. P. 25.2(b)(3). Because Appellant received permission to appeal only the denial of his motion to
suppress, and he is not now complaining that there is a jurisdictional defect, we have no jurisdiction to address such issues. 

 We affirm the judgment of the trial court.



 SAM GRIFFITH 

 Justice



Opinion delivered November 28, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.











































(DO NOT PUBLISH)




1. See Sharp v. State, 707 S.W.2d 611, 617 (Tex. Crim. App. 1986)(no reason why rule of consent for homes and
buildings should not apply to automobiles).

2. Appellant was simply a passenger, with no property interest in the vehicle itself.

3. The uncontradicted evidence at the suppression hearing was that Baggett gave his consent to search his vehicle. Baggett
did not testify.

4. As the Court of Criminal Appeals has stated, while most confrontations with the police are uncomfortable - given the
implicit difficulty in refusing any request from a peach officer who stands cloaked in the authority of law enforcement -
"the Constitution does not guarantee freedom from discomfort." State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim.
App. 1999). However, the Constitution presumes that we are aware of our own constitutional rights and will assert those
rights when they are implicated. Carmouche, 10 S.W.2d at 333.

5. Appellant argues that the presence of the hypodermic needle was just as consistent with lawful activity as with unlawful
activity, and therefore could not create reasonable suspicion. (citing Daniels v. State, 718 S.W.2d 702 (Tex. Crim. App.
1986). However, the Court of Criminal Appeals has held that "as consistent with innocent activity as with criminal
activity" test is no longer viable for determining reasonable suspicion. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim.
App. 1997)