The STATE of Texas, Appellant,

v.

**Jason Michael NOLAN, Appellee.**

The STATE of Texas, Appellant,

v.

**Scott Wayne HOLLAND, Appellee.**

The STATE of Texas, Appellant,

v.

**Bill Aron DUNCAN, Appellee.**

The STATE of Texas, Appellant,

v.

**Donovan DUNN, Appellee.**

Nos. 3–90–203–CR through 3–90–206–CR.

Court of Appeals of Texas,
Austin.

April 10, 1991.

---

Kevin M. Wilson, Austin, for appellant.

Gene Stratton, Burnet, Jay Floyd, Llano, for appellee.

Before CARROLL, C.J., and JONES and SMITH, JJ.

PER CURIAM.

The State appeals orders of the county court granting appellees' motions to suppress evidence and to dismiss the prosecutions against them. Tex.Code Cr.P.Ann. art. 44.01 (Supp.1991). The informations ordered dismissed accuse appellees of possessing less than two ounces of marihuana.

Appellees were arrested after a bag of marihuana was found in the glove compartment of an automobile in which they were traveling. In their motions to suppress, appellees urged that the initial stop of the car and the subsequent search of the glove compartment were violations of state and federal constitutional prohibitions against unreasonable searches and seizures. Following a hearing, the motions to suppress were granted. Subsequently, appellees filed motions to dismiss on the ground that the evidence remaining after the suppression order is insufficient to support a conviction. These motions were also granted. The State gave timely notice of appeal from the orders of the trial court.

On April 15, 1990, a Department of Public Safety trooper and three Llano County sheriff's deputies set up a roadblock on Ranch Road 3404. One of the deputies was Curtis Tisdale, the only witness to testify at the hearing on appellees' motions to suppress. According to Tisdale, the roadblock was "a routine driver's license and

insurance check" during which every motor vehicle entering the checkpoint was stopped and an inquiry was made whether the driver had an operator's license and proof of liability insurance. One of the cars stopped at the roadblock was an Oldsmobile driven by appellee Bill Aron Duncan, and in which appellees Jason Michael Nolan, Scott Wayne Holland, and Donovan Dunn were passengers. Tisdale testified that the Oldsmobile was stopped solely for the purpose of checking for a driver's license and proof of insurance.

Tisdale asked to see Duncan's driver's license, and Duncan complied. Tisdale then asked to see proof of liability insurance. Duncan asked Holland, who was the front seat passenger, to "Hand me the insurance out of the glove box." Tisdale described what then happened:

> A As I stated and explained a while ago, the driver asked the right front passenger to hand him the insurance.
>
> He placed his left hand upon the dash with his thumb in front of the glove compartment door, unlocked it by his hand and allowed it to only open by a few inches.
>
> He had trouble getting his hand in there and he scrambled around in there a little bit with his hand looking for it, and then he came out with it, and as soon as his hand came out, he slammed it shut right quick.
>
> Q How was he acting at that point?
> A As if there was something in there he didn't want me to know about, and being though as I was standing there and they had the rifle butt in the car and he was acting that way, I felt that there was something in there such as a firearm.
>
> That's what I had in my mind is that they had another firearm in there.

> Q So you were concerned about a concealed weapon being in this glove compartment?
> A Yes.

Tisdale had previously testified that as he watched Holland retrieve the insurance form, he saw through the window a wooden rifle stock in the back seat of the car. This weapon proved to be a pellet rifle. Tisdale also testified that the occupants of the car appeared to be unusually nervous.

For "officer safety," Tisdale ordered appellees to exit the vehicle. Tisdale then opened the glove compartment, in which he found not a weapon, but a small plastic bag of a substance he believed was marihuana.

### Standing

■ Although it did not raise this issue below, the State now argues in its first point of error that appellees lack standing to contest either the stop of the vehicle or the search of the glove compartment. That is, the State urges that appellees failed to demonstrate that the stop and search infringed on their personal and legitimate expectations of privacy. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Chapa v. State*, 729 S.W.2d 723, 727 (Tex.Cr.App.1987).

In its most recent opinion speaking directly to the point, the Court of Criminal Appeals held that the existence of a legitimate privacy interest is an element of the defendant's constitutional claim which he has the burden of establishing, and that the absence of a challenge to the defendant's standing by the State in the trial court does not preclude the State from raising the issue on appeal. *Wilson v. State*, 692 S.W.2d 661, 669 (Tex.Cr.App.1985) (opinion on motion for rehearing).[1] *Wilson*, however, was an appeal by the defendant in which the point of error challenged the

---

1. *Wilson* was the last in a series of opinions in which the Court of Criminal Appeals endeavored to answer the question whether the State could raise standing for the first time on appeal, never reaching the same answer twice. *See Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975); *Sullivan v. State*, 564 S.W.2d 698, 704 (Tex.Cr.App.1978) (opinion on rehearing). *See also Hernandez v. State*, 762 S.W.2d 578 (Tex.Cr.App.1988) (opinion dissenting to refusal of discretionary review). More recently, the court has hinted that its opinion on this question may change once again. *See Goodwin v. State*, 799 S.W.2d 719, 725 (Tex.Cr.App.1990); *Russell v. State*, 717 S.W.2d 7, 9 fn. 6 (Tex.Cr.App.1986). None of the cases were appeals by the State from orders suppressing evidence.

overruling of a motion to suppress. The court in *Wilson* noted that a different rationale might apply in appeals by the State from an order granting a motion to suppress. 692 S.W.2d at 667–68.

■ The State is not before this Court in its accustomed role as appellee. Instead, the State is the appellant and bears the burden of demonstrating that the trial court committed reversible error. As a general rule, appellate courts will not consider errors, even those of constitutional magnitude, not called to the trial court's attention. *Aylor v. State*, 727 S.W.2d 727, 730 (Tex.App.1987, pet. ref'd). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desired the court to make. Tex.R.App.P.Ann. 52(a) (Pamph.1990). Applying these rules to the causes before us, the State may not complain on appeal that appellees lacked standing because the State did not present this contention to the trial court. The point of error presents nothing for review.

■ We emphasize that this is not a case in which there is uncontradicted affirmative evidence establishing, as a matter of law, that appellees' lack standing. Different considerations would apply if, for example, there were undisputed evidence that the car had been stolen by appellees, *Jackson v. State*, 745 S.W.2d 4, 8 (Tex.Cr.App. 1988), or if appellees, at the hearing, had disclaimed any interest in or connection to the car. *Jimenez v. State*, 750 S.W.2d 798, 804 (Tex.App.1988, pet. ref'd). *See Sullivan v. State*, 564 S.W.2d 698, 704 (Tex.Cr. App.1978) (opinion on rehearing).

The State's first point of error is overruled.

### Search and Seizure

In its second point of error, the State urges that the trial court erred in concluding that appellees were the victims of an unlawful search or seizure. In their motions to suppress, appellees challenged two separate acts by the police: (1) the stop of the automobile and detention of its occupants pursuant to the driver's license checkpoint; and (2) the subsequent search of the glove compartment. At the conclusion of the hearing, the court stated that it was not suppressing the evidence "on the constitution" but "on the probable cause of the search." We understand this to mean that the trial court did not base its order on a finding that the initial stop was unlawful, but on a finding that the officer was not authorized to search the glove compartment following the stop. Because we find no reversible error in the trial court's ruling with respect to the search, we do not address the State's contention that the checkpoint stop was lawful. We will merely assume that the initial stop was lawful for the purposes of this opinion.

Having lawfully detained a suspect for the purpose of investigation, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the Supreme Court stressed the investigating officer's need to protect himself in such circumstances:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30–31, 88 S.Ct. at 1884–85.

■ Where officers have temporarily detained the driver of an automobile under *Terry*, they may search those parts of the passenger compartment where a weapon may be hidden, if the officers have a reasonable belief that the detainee is danger-

ous and may gain access to a weapon. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The Supreme Court stated:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possessed a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry*, 392 U.S. at 21 [88 S.Ct. at 1879]. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*, at 27 [88 S.Ct. at 1883]. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.

463 U.S. at 1049–50, 103 S.Ct. at 3480–81 (footnote omitted).

■　In the causes before us, the police did not stop and detain appellees based on any reasonable suspicion that they were engaged in criminal activity. To the contrary, the stop of appellees at the checkpoint was a "suspicionless seizure" for the limited purpose of enforcing the driver's licensing and mandatory liability insurance laws. *Higbie v. State*, 780 S.W.2d 228, 236–37 (Tex.Cr.App.1989). Moreover, Tisdale undertook what he described as his

protective search for weapons only after he had determined that Duncan had a valid driver's license and proof of liability insurance. Further, Tisdale never testified that he believed that appellees were dangerous.

We do not hold that a *Long*-type weapons search can never be justified following a stop at a license checkpoint. However, the conduct of such searches must be carefully circumscribed if a license checkpoint is not to become an excuse for general searches of the vehicles stopped. *Meeks v. State*, 692 S.W.2d 504, 508 (Tex.Cr.App. 1985).

At a hearing on a motion to suppress evidence, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and an appellate court must defer to the trial court's findings of fact absent a clear abuse of discretion. *State v. Carr*, 774 S.W.2d 379 (Tex.App.1989, no pet.). In the causes before us, the trial court has not been shown to have abused its discretion by concluding that the officer did not have a reasonable basis for believing that a search of the glove compartment of appellee's vehicle was required for his safety or the safety of others. No other lawful basis for the warrantless search is urged by the State or suggested by the evidence. We affirm the order of the county court granting appellees' motions to suppress.

### Dismissal of Prosecutions

■　The county court was not authorized to dismiss these causes on appellees' motions. *State v. Shelton*, 802 S.W.2d 80 (Tex.App.1990, pet. filed); *State v. Gray*, 801 S.W.2d 10 (Tex.App.1990, no pet.). While the county court's orders suppressing evidence may have the practical effect of making convictions in these causes impossible, it is for the prosecutor, as the officer charged with the responsibility for preparing and prosecuting criminal suits, to decide whether a prosecution is sustainable. The situation is analogous to that presented when an appellate court reverses a conviction because a motion to suppress evidence should have been granted. *See*

*Collins v. State*, 602 S.W.2d 537 (Tex.Cr. App.1980).

The orders granting appellees' motions to suppress evidence are affirmed. The orders granting appellees' motions to dismiss are reversed and the causes are remanded to the county court.