**Cleveland HAWKINS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 07–92–0087–CR.**

Court of Appeals of Texas,
Amarillo.

March 1, 1993.

Rehearing Denied March 31, 1993.

Motion to Publish Granted May 20, 1993.

Jeffrey H. Conner, Lubbock, for appellant.

Travis Ware, Crim. Dist. Atty., Michael West, Lubbock, for appellee.

Before DODSON, BOYD and POFF, JJ.

DODSON, Justice.

Upon a plea of not guilty, appellant Cleveland Hawkins was convicted of possession of less than twenty-eight grams of cocaine. Upon finding the indictment's two enhancement paragraphs true, the jury assessed appellant's punishment at confinement for life in the Texas Department of Corrections, Institutional Division. In a single point of error, appellant contends the trial court erred in overruling his suppression motion and admitting evidence recovered in an unlawful investigative detention. We reverse and remand.

At about 12:15 a.m. on December 2, 1990, Jeff Davis, a Lubbock police officer, was patrolling the area of 17th Street and Avenue B. Davis reported that this area was a high crime area, primarily known for street level drug dealing. While patrolling, Davis observed a green Oldsmobile parked on the street between two apartment buildings, where Davis previously made several arrests for drug violations. Whereupon Davis activated his spotlight and saw two black men in the car. Davis recognized appellant as the driver. As the light shined upon him, appellant immediately bent down and reached under his seat.

Davis knew appellant was a convicted felon, had a violent nature, and had been held for narcotics violations. Davis stopped his car and decided to speak with appellant and the passenger, "just for a field interview." Davis parked his car and officer Pedro Lara, who had been following him, also parked his car. Davis approached appellant, who rolled down his window. Davis intended to ask appellant to step out of the car. In the meantime, Lara went to the passenger side, got the

passenger (Kim Carter) out of the car, and asked Davis to assist him. Davis took Carter to his squad car. Yet before taking Carter to his car, Davis told Lara to watch appellant because he thought appellant might have a weapon in the car.

When Davis started back toward appellant, Lara already had him out of the vehicle. Davis saw appellant take something out of his mouth and place it in Lara's hand. Appellant then gave Lara a cellophane wrapper containing 15 yellow papers. Davis conducted a field test which indicated the presence of cocaine.

Davis admitted that they did not have a warrant for appellant or Carter. Davis also acknowledged that appellant's furtive gesture, of reaching beneath his seat, could have been innocent.

Lara testified that on December 2, 1990, he and Davis were patrolling the 1700 block of Avenue B, an area of town known as "the flats." The officers parked their cars and went to interview appellant and Carter. As Davis walked to the driver's side, Lara walked to the passenger side of the vehicle. Lara asked Carter to step out of the car and place his hands on the vehicle. Lara conducted a pat-down search and discovered a wad of money in Carter's right front pocket.

Lara acknowledged that before the frisk he had no reason to believe that Carter had committed a crime. Davis then walked to the passenger side and took Carter to his patrol car. Lara explained that he was trained to separate any subjects. Furthermore, he frisked Carter for his own safety.

As the three walked toward the patrol cars, Davis asked Lara to check on the driver. Lara noticed appellant look at him, move his head down, and place something in his mouth. Lara walked to appellant, held out his hand, and waited. Appellant then took the plastic out of his mouth and put it in Lara's hand. Lara then had appellant exit the car. Lara said the plastic contained some yellow papers, commonly used in packaging cocaine.

Lara admitted that he did not know what they were going to do when Davis stopped his car. Lara had no idea they were going to stop or frisk the men.

Appellant testified that on December 2, 1990, he was parked on Avenue B in Lubbock. Appellant and Carter were seated in the car. When Lara started to walk toward the car, appellant stepped out. After he exited, Davis told him to get back in the car. Eventually, Lara came to talk to him and asked him to get out of the car. Lara asked him what he had in his mouth. At first, appellant denied having anything in his mouth. When Lara instructed him to open his mouth, appellant spit out the cocaine.

Appellant denied carrying a weapon or, for that matter, having been convicted of a weapons charge. Appellant also denied making any furtive movements in the car. Finally, appellant denied putting anything in his mouth after the officers started talking to them.

Carter testified that on the night in question, appellant was sleeping in the car. Carter had just returned to the car, when suddenly "lights were everywhere." Upon the officer's request, Carter exited the car. The officers asked what he was doing and looked in his pockets. They took him to one of the patrol cars. Then, one of the officers got appellant out of the car. Carter testified that while one of the officers was talking to appellant, something fell out of appellant's mouth. Carter admitted that he had been selling drugs out of the car that night.

 In a pretrial hearing on a motion to suppress evidence seized as a result of an illegal arrest or a warrantless search, we are mindful that the trial court is the exclusive trier of fact and his findings will not be disturbed if supported by the evidence. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Cr.App.1981); *McCallum v. State,* 608 S.W.2d 222, 225 (Tex.Cr.App.1980); *Walker v. State,* 588 S.W.2d 920, 924 (Tex. Cr.App.1980). It is the duty of the trial court to resolve conflicts in the testimony at the suppression hearing. *Sanchez v. State,* 582 S.W.2d 813, 815 (Tex.Cr.App. 1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980).

The burden of demonstrating the legality of a warrantless arrest is on the State. *Wilson v. State,* 621 S.W.2d 799, 804 (Tex.Cr.App.1981). State law governs the legality of arrest so long as it does not violate federal constitutional protections. The states are free to impose greater restrictions on police conduct. Texas law governing warrantless arrests is generally more protective than the federal constitution. *Milton v. State,* 549 S.W.2d 190, 192 (Tex.Cr.App.1977). A warrantless arrest or search must be justified by what is known by the police officers at the inception of the search or arrest and cannot be justified by evidence seized as a result of the arrest and search. *Colston v. State,* 511 S.W.2d 10, 13 (Tex.Cr.App.1974).

Law enforcement officers are not required to look the other way and permit a crime to occur or a criminal to escape. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Milton v. State,* 549 S.W.2d 190, 193 (Tex.Cr.App. 1977). There are circumstances short of probable cause that justify temporary detention for purposes of investigation because an investigation is less intrusive upon personal security. *Milton v. State,* 549 S.W.2d at 193. The detention is justified if the police have specific, articulable facts, which in the light of general knowledge and experience, together with rational deductions from those facts that would reasonably warrant an intrusion on the freedom of a citizen stopped for further investigation. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Milton v. State,* 549 S.W.2d at 193. A peace officer has the right to detain a suspect for questioning in a criminal investigation if, the detention is based on reasonable suspicion and restricted in obtrusiveness, time of detention, and scope of the investigation. *United States v. Brignoni-Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975); *Ussery v. State,* 651 S.W.2d 767, 770 (Tex.Cr.App.1983).

Also, temporarily detaining suspects, while officers attempt to verify or dispel suspicions in a manner that does not exceed the limits of an investigative detention, can be authorized. *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 239 (1983). The officer may question a suspect during a temporary detention, although the suspect need not answer the questions. *Id.* at 498, 103 S.Ct. at 13. Obviously, a temporary detention is not merely confined to a momentary, on-the-street detention accompanied by a frisk for weapons. *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

When an officer validly delays a person for investigation, he may conduct a narrow search for his safety. *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883. The determination of the rights of Texas citizens under Article I, section 9 of the Texas Constitution on the scope of a search for weapons following an investigatory detention is the same as the Fourth and Fourteenth Amendments to the United States Constitution. *Davis v. State,* 829 S.W.2d 218, 219 (Tex.Cr.App.1992); *Worthey v. State,* 805 S.W.2d 435, 437 (Tex.Cr.App.1991).

The Supreme Court recognizes that (1) protection of police and others can support protective searches when officers have a reasonable belief that the detainee is potentially dangerous, (2) roadside meetings between suspects and police are extraordinarily hazardous, and (3) a risk exists concerning weapons in the area around a suspect at a roadside encounter. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983); *State v. Nolan,* 808 S.W.2d 556, 559 (Tex.App.— Austin 1991, no pet.). The issue in an investigatory search is whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety was in danger. *Id.*

It is good judgment for an officer to have the passenger exit the car after he observes the passenger moving an object in the car seat. *Borner v. State,* 521 S.W.2d 852, 855 (Tex.Cr.App.1975). Under such circumstances, an officer has reasonable belief that the passenger may be armed and dangerous. *Id.* The purpose of a restricted search after a temporary detention is to permit the officer to investigate with-

out fear of violence. *Perez v. State*, 548 S.W.2d 47, 49 (Tex.Cr.App.1977).

We will review two closely analogous cases. First, in *Comer v. State*, 754 S.W.2d 656 (Tex.Cr.App.1986), two officers, at about 7:40 p.m. on a Saturday, spotted the accused and another male inside a pickup in the parking lot of a restaurant, which was located in a high crime area. The cab of the pickup was illuminated by the interior dome light. This revealed the men engaged in some activity in the seat between them. As the officers entered the parking lot, the men drove away. Although the officers testified that they believed the restaurant was closed, the owner stated that the restaurant stayed open until at least 10:00 p.m. on Saturday nights. The officers testified that based upon their knowledge and experience, they believed some criminal activity was occurring. Under these circumstances, the events were as consistent with innocent activity as they were with criminal activity and, therefore, inadequate to show reasonable suspicion to warrant a stop and search. *Id.* at 658. *See also Tunnell v. State*, 554 S.W.2d 697 (Tex. Cr.App.1977).

Second, in *Johnson v. State*, 658 S.W.2d 623 (Tex.Cr.App.1983), a police officer observed the accused's pickup, loaded with furniture, parked in a McDonald's parking lot at 5:00 a.m., while the restaurant was closed. The officer became suspicious, approached the car, ordered the accused out of the truck, and asked to see his driver's license. The Court determined that appellant was detained when the officer ordered him out of the vehicle and demanded to see his drivers license. Under these circumstances, the officer had no reasonable suspicion when he ordered the suspect out of the car.

■ In the instant case, when the officers stopped their vehicles and approached the car occupied by appellant and Carter, they had no specific articulable reason to detain appellant. There were no outstanding warrants on the two men. Plus, there were no reports of drug dealing in the area that night. Instead, the officers stopped, because Davis recognized appellant, knew of appellant's criminal history, and the men were parked in an area known for street level drug trafficking.

■ In this instance, the officers had no more than an inarticulate hunch that illegal activity was occurring, or about to occur. At the time Carter exited the car, a stop and detention was effectively initiated as to appellant because he was not free to leave. *Johnson v. State*, 658 S.W.2d at 626; *Herrera v. State*, 665 S.W.2d 497, 503 (Tex.App.—Amarillo 1983, pet. ref'd). In addition, the conduct of appellant, by reaching for the floorboard or putting something in his mouth, is as consistent with innocent activity as with criminal activity. *Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Cr.App.1982); *State v. Phillips*, 752 S.W.2d 194, 196 (Tex.App.—Amarillo 1988, no pet.). Finally, the State cannot justify the search because Lara was afraid appellant was armed, since he did not search appellant before obtaining the cocaine. Consequently, the cocaine was the fruit of the poisonous tree.

■ The State argues that since appellant voluntarily consented to the search, there is no error in the admission of the cocaine at trial. However, the officer did not ask appellant to consent to a search. Instead, Lara merely approached appellant and held out his hand. Appellant then took the plastic out of his mouth and placed it in the officer's hand. Therefore, the State merely demonstrated that appellant acquiesced to a claim of lawful authority, which is insufficient to establish consent. *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797; *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Cr.App.1987). The purported consent is merely an exploitation of the prior illegality and no intervening circumstances attenuated the initial illegal detention. *Reyes v. State*, 741 S.W.2d at 431. Consequently, the State did not sustain its burden of showing that the search was free and voluntary. Consequently, point of error one is sustained.

Accordingly, the judgment of the trial court is reversed and the cause is remanded to the trial court.