TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00418-CR






Robert Faglie, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0931572, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 Appellant Robert Faglie appeals his conviction for possession of cocaine. See Act of May
18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2936 (Tex. Health & Safety Code
Ann. § 481.115(a), (b), since amended). After a period of deferred-adjudication community supervision,
the trial court found Faglie guilty and assessed punishment, enhanced by a prior conviction, at twenty years'
confinement. We will affirm the conviction.


BACKGROUND

 At about 6:15 in the morning on February 20, 1993, a sheriff's deputy stopped Faglie for
driving with a defective tail light. After Faglie stopped and got out of his car, the deputy frisked him for
weapons. After the deputy failed to find any weapons on Faglie's person, the deputy looked in the car. 
He did not notice any weapons there but saw a white "needle cap" on the passenger seat of the car. He
also noticed that the seat cover of the passenger seat was "crumpled up in the center." When the deputy
looked under the seat cover, he found another needle cap, a syringe, and a plastic baggie containing a clear
liquid stuffed inside the needle cap. The officer then arrested Faglie for possessing a controlled substance. 
See Tex. Health & Safety Code Ann. § 481.116(a), (d). At the station, the deputy tested the liquid in the
plastic baggie and found it to contain cocaine. Faglie was later indicted for the offense.

 In a pretrial motion to suppress evidence, Faglie challenged the admissibility of the evidence
obtained as a result of the deputy's search of the vehicle. The trial court denied the motion. Later, Faglie
entered into a plea agreement with the State. In accordance with the terms of that agreement, Faglie pled
guilty to the offense and the trial court deferred adjudication of guilt for eight years. See Tex. Code Crim.
Proc. Ann. art. 42.12, § 5 (West Supp. 1998). Almost three years later, upon the State's motion, the trial
court adjudicated Faglie guilty of the offense. The court sentenced Faglie to confinement for twenty years,
taking into account the fact that Faglie had previously been convicted of another felony. See Tex. Penal
Code Ann. §§ 12.32(a), .42(b) (West 1994). Faglie appeals his conviction in three points of error.


DISCUSSION

 In points of error one and two, Faglie argues the trial court erred in denying his motion to
suppress evidence. He does not challenge the initial stop or the frisk of his person. Rather, he alleges the
warrantless search of the car violated both the Fourth Amendment to the United States Constitution and
article I, section 9 of the Texas Constitution.

 These constitutional provisions guarantee the right of people to be free from unreasonable
searches. See U.S. Const. Amend. IV; Tex. Const. art. I, § 9. Warrantless searches are per se
unreasonable unless they fall within one of the established exceptions to this general rule. Mincey v.
Arizona, 437 U.S. 385, 390 (1978).

 In the oft-cited case of Terry v. Ohio, the United States Supreme Court sanctioned an
exception for protective searches for weapons during temporary detentions by holding:


Where a police officer observes unusual conduct which leads him reasonably to conclude
in light of his experience that criminal activity may be afoot and that the persons with whom
he is dealing may be armed and presently dangerous, where in the course of investigating
this behavior he identifies himself as a policeman and makes reasonable inquiries, and
where nothing in the initial stages of the encounter serves to dispel his reasonable fear for
his own or others' safety, he is entitled for the protection of himself and others in the area
to conduct a carefully limited search of the outer clothing of such persons in an attempt to
discover weapons which might be used to assault him.


392 U.S. 1, 31 (1968); see also Ramirez v. State, 672 S.W.2d 480, 482 (Tex. Crim. App. 1984). The
Court reasoned that it is unreasonable to deny a police officer the right "to neutralize the threat of physical
harm," when he has an articulable suspicion that the detainee is armed and dangerous. Terry, 392 U.S.
at 24.

 The Court later explained that this exception extends to protective searches for weapons
in passenger compartments of cars during lawful investigatory, or "Terry," stops. Michigan v. Long, 463
U.S. 1032, 1049-50 (1983). Officers conducting searches pursuant to this exception must, however, limit
their searches to those areas in which a weapon may be placed or hidden. Id. at 1049. Furthermore, an
officer must have a reasonable belief based on "specific and articulable facts which, taken together with the
rational inferences from those facts, reasonably warrant" the officer to believe that the suspect is dangerous
and might gain immediate control of weapons. Id. (citing Terry, 392 U.S. at 21); see also Goodwin v.
State, 799 S.W.2d 719, 727-28 (Tex. Crim. App. 1990).

 We review a trial court's application of these legal principles to the facts of a particular case
de novo except we give great deference to the trial court's assessment of the demeanor and credibility of
the witnesses. Guzman v. State, 955 S.W.2d 85, 87-88 (Tex. Crim. App. 1997) (citing Ornelas v.
United States, 517 U.S. 690 (1996)).

 The deputy testified at the hearing on the motion to suppress that he first noticed the traffic
violation for which he decided to stop Faglie when the deputy stopped his car behind Faglie's at a traffic
light. The deputy then saw Faglie do several unusual things. For instance, after the light turned green,
Faglie turned, drove west down a major road and turned onto a dead-end street. The deputy, suspecting
Faglie was trying to evade the traffic stop, passed the dead-end street and stopped his vehicle further down
the road. The officer watched Faglie drive out of the dead-end street and go east on the major road, the
opposite direction from the one he originally drove. The officer then pursued Faglie, activated his overhead
lights, and used a spotlight to illuminate the inside of Faglie's vehicle while he was driving. Faglie took what
the deputy considered to be a "long time" to stop -- between an eighth and a quarter of a mile. Before
Faglie brought his car to a stop, the deputy saw Faglie move toward the passenger side of the car.

 After Faglie stopped, the deputy asked him to get out of the car. The deputy noticed that
Faglie, a large man, was sweating on his forehead and face, despite that it was a cool February morning
and Faglie was not wearing a heavy coat. The deputy characterized Faglie as "acting nervously." The
deputy testified that because Faglie was nervous, had possibly attempted to evade the stop, had taken a
long time to stop, and had gestured toward the passenger side of the car but failed to produce an insurance
card after the stop, the deputy feared for his safety and decided to conduct a search for weapons.

 When the deputy looked inside the car, he saw the crumpled passenger seat cover along
with the needle cap on top of the seat cover. The officer testified that when he saw the needle cap, he
suspected the presence of contraband, namely a controlled substance. He then searched under the seat
cover and found cocaine, along with another "needle cap" and syringe. The officer did not, however,
search under the seat cover solely to discover illegal drugs. When first asked what he was looking for
when he searched the passenger side of the car, the deputy said he was "concerned mainly with any type
of weapon."

 The trial court also heard testimony from a civilian who had been riding with the deputy
during the stop. The civilian's testimony corroborates the deputy's statements in almost all respects. For
instance, the civilian testified about Faglie's turn down the dead-end street and subsequent reversal of his
direction on the major road. The civilian testified that Faglie drove "quite a ways" before pulling over, and
passed appropriate places to pull over before he finally did. More importantly, the civilian testified that
Faglie had been "bent over into the passenger side like he was trying to get something off the floor or the
glove compartment or something like that" and that "occasionally [his] head would pop up and look over
the dashboard." He later described Faglie's movements as directed toward the "floorboard or the glove
compartment" or "the opposite side of the seat." The civilian's testimony differs from the deputy's in only
one respect: the civilian indicated the deputy's reason for searching the car was to discover drugs, but the
civilian did not mention weapons. The civilian did not testify, however, that the officer did not have
weapons in mind when he searched Faglie's car. Furthermore, the civilian remained inside the patrol car
until after the search was completed; he did not accompany the deputy to the car for the search.

 Because we must give great deference to the trial court's assessment of the historical facts,
we will view the witnesses' testimony in a light favorable to the trial court's ruling. See Guzman, 955
S.W.2d at 89. The only issue before us is whether the historical facts as the trial court found them establish
that the deputy's search fell within an exception to the warrantless search prohibition.

 We hold that the evidence establishes that the deputy's search fell within the exception for
protective searches for weapons during temporary detentions. The deputy articulated specific facts that
reasonably led him to believe that Faglie might be dangerous or might gain control of a weapon from the
car during the stop. The specific facts articulated were that Faglie appeared to be evading the stop, took
an unusually long time to pull over, appeared to be manipulating something in the passenger side of the car
before he pulled over, and appeared nervous and sweaty when he finally stopped. Furthermore, the deputy
noticed the passenger's seat cover was "crumpled," indicating something might be underneath it, when he
looked in the passenger's side of the car. We also note the deputy's search was limited to the area of the
car in which Faglie appeared to be manipulating something immediately before he pulled over.

 Faglie contends these facts do not support the search of the passenger side of the car
because he was no longer in the car during the search and was, thus, unable to reach any weapon that might
have been inside the car. It is, however, reasonable to infer from the evidence that it was physically
possible for Faglie to get back in the car and attempt to retrieve a weapon while the officer was conducting
the temporary detention or immediately after the detention if the officer decided not to arrest Faglie. Thus,
the evidence supports the inference that any weapons in the car would pose a danger or risk to the deputy,
even though Faglie had already gotten out of the car.

 Many courts, including this one, have rejected the same argument Faglie raises under
strikingly similar circumstances. See Long, 463 U.S. 1052-53; Ardoin v. State, 955 S.W.2d 420, 423
(Tex. App.--Beaumont 1997, no pet.); see also Alexander v. State, 879 S.W.2d 338, 343 (Tex.
App.--Houston [14th Dist.] 1994, pet. ref'd), cert. denied, 115 S. Ct. 1999 (1995); Ramsey v. State,
806 S.W.2d 954 (Tex. App.--Austin 1991, pet. ref'd). We conclude that the deputy's search constituted
a lawful protective search during a temporary detention, despite that the deputy conducted the search after
Faglie had stepped out of and moved to the back of the car.

 The constitutional provisions Faglie relies upon do not require an officer who discovers
illegal drugs instead of weapons during a legitimate protective search incident to a Terry stop to ignore the
presence of the drugs. E.g., Long, 463 U.S. at 1050; Ardoin, 955 S.W.2d at 423; Alexander, 879
S.W.2d at 343; see also Hawkins v. State, 853 S.W.2d 598, 601 (Tex. App.--Amarillo 1993, no pet.)
(Fourth Amendment and article I, section 9 afford same protection in this context) (citing Davis v. State,
829 S.W.2d 218, 221 (Tex. Crim. App. 1992)). Therefore, that the deputy discovered the drug
contraband during a search for weapons is inconsequential. We overrule points of error one and two.

 In point of error three, Faglie contends the trial court erred by "receiving" evidence in the
form of "unsworn testimony from the attorneys" at the suppression hearing. Faglie specifically challenges
the following exchange, which took place between the trial court and the attorneys at the end of the
suppression hearing and concerned another theory the State argued validated the search:


The Court: I'm just trying to clarify in order to determine whether or not the sight of
that white cap is probable cause because I'm not certain as to whether or
not that has been defined as being, you know, drug paraphernalia. I
mean, I understand the syringe is, but I'm not certain a white cap over the
top of a syringe is. Do you know the answer to that?


Prosecutor: Based on his testimony, I'm not sure if he said expressively [sic] that he
thought it was drug paraphernalia when he saw the white cap.


The Court: I think he did say that.


Prosecutor: Correct. I guess that's based on his experience.


The Court: [Defense Attorney], is there anything that you wish to bring to my attention
at this point?


Defense: Not at this point. I image [sic] the court reporter has all of this down.

 We reject Faglie's argument for two reasons. First, the exchange between the court and
the lawyers at the suppression hearing was akin to closing argument and in no way indicates the trial court
ultimately relied upon the lawyers' statements rather than the actual sworn testimony of the deputy. 
Second, even if the attorneys' comments somehow constituted evidence, Faglie did not object to the trial
court's receipt of it. Because he failed to object, Faglie waived any possible error. See Tex. R. App. P.
33.1; e.g., Little v. State, 758 S.W.2d 551, 563 (Tex. Crim. App. 1988). Accordingly, we overrule point
of error three.


CONCLUSION

 Having overruled all Faglie's points of error, we affirm the judgment of conviction.



 _____________________________________________

 Lee Yeakel, Chief Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: June 25, 1998

Do Not Publish


 Many courts, including this one, have rejected the same argument Faglie raises under
strikingly similar circumstances. See Long, 463 U.S. 1052-53; Ardoin v. State, 955 S.W.2d 420, 423
(Tex. App.--Beaumont 1997, no pet.); see also Alexander v. State, 879 S.W.2d 338, 343 (Tex.
App.--Houston [14th Dist.] 1994, pet. ref'd), cert. denied, 115 S. Ct. 1999 (1995); Ramsey v. State,
806 S.W.2d 954 (Tex. App.--Austin 1991, pet. ref'd). We c