**Mark Edward REASOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00390–CR.**

Court of Appeals of Texas,
San Antonio.

March 3, 1999.

---

Nancy B. Barohn, Dallas, for Appellant.

Judy Madewell, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice and CATHERINE STONE, Justice.

## OPINION

TOM RICKHOFF, Justice.

May a handcuffed motorist, arrested by four policemen with guns drawn and brought into his residence involuntarily, nevertheless freely and voluntarily give his consent to a search of that residence? We answer in the negative.

Mark Edward Reasor pleaded guilty to possessing a controlled substance after his motion to suppress evidence was denied. In two issues Reasor argues the trial court violated state and federal constitutional protections by not suppressing evidence gathered pursuant to his warrantless arrest and the warrantless search that ensued. Because we believe Reasor's constitutional protections under the Texas constitution were violated, we reverse and remand.

### FACTS

Reasor challenges admission of the evidence under both Art. 1, § 9 of the Texas Constitution and the Fourth and Fourteenth Amendments of the U.S. Constitution. Because the facts and the law are so blended and interwoven, we will consider these points together, pointing out any divergence between the standards as necessary. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App. 1991).

Testimony at the motion to suppress hearing showed the following:

An informant told Deputy Sheriff Vincent Bellino that Reasor would be distributing cocaine on the night in question. Based on this information, Bellino set up surveillance. He said he and three fellow deputies followed Reasor in two unmarked vehicles as he visited three residences; Reasor stayed for only three to five minutes at each residence. Bellino said that, in his experience, this behavior was consistent with an individual delivering narcotics. Bellino and the other officers arrested Reasor, guns drawn, when he pulled into the driveway of his residence.

Bellino said Reasor and a friend who was riding with him were patted down for weapons and handcuffed. At that point, Bellino said, he noticed a small brown zipper bag "laying right on top of the dash, right above the steering wheel;" Bellino said he could see "clear plastic bags containing a white powdered substance" inside the unzipped bag. Bellino secured the evidence and read Reasor his Miranda rights.

Bellino said the garage door to Reasor's residence was open at the time of his arrest. After Reasor and his friend were arrested, the other deputies "swept" through the residence "just to assure that there was no one inside." At that point Reasor was brought inside, Bellino said, through a utility room and into the living area to a pool table. It was there that Reasor identified the contraband found in his car as cocaine and signed his Miranda warning form and the consent to search form. Bellino acknowledged that Reasor was handcuffed during the entire process; he was able to sign forms and direct officers because he was handcuffed in front.

Inside the residence Reasor pointed out about a pound of cocaine in his bedroom, a quarter-pound of marijuana in his living room and a small amount of cocaine in a drawer. Police also found a triple-beam scale and a ledger containing customers' names in the house. Bellino said Reasor's companion was allowed to leave once Reasor assured them the companion was not involved in drug deliveries.

### STANDARD OF REVIEW

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court may accept or reject any or all of any witness's testimony. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App. 1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). The trial court resolves all conflicts in the testimony. *Hawkins v. State*, 853 S.W.2d 598, 600 (Tex.App.—Amarillo 1993, no pet.)

An appellate court must view the evidence in the light most favorable to the trial court's ruling at the suppression hearing. *Upton v. State*, 853 S.W.2d 548, 553 (Tex.Crim.App.1993); *State v. Hamlin*, 871 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). On appellate review, the court will normally address only the question whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543. The reviewing court affords

almost total deference to the trial court's determination of historical facts, as well as to the trial court's rulings on mixed questions of law and fact when determination of those questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

### WARRANTLESS ARREST

Reasor complains first that because the cocaine found in his vehicle was found after he was arrested, this cocaine should have been suppressed because officers did not have probable cause to arrest him until they found it. Resolution of his appeal will therefore turn, first, on whether the record supports the trial court's finding that officers had probable cause to arrest Reasor prior to the discovery of cocaine.

Officers are authorized to make a warrantless arrest when an offender commits any offense in his presence or within his view. TEX.CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 1977). Courts have put the question as "[w]hether at that moment the facts and circumstances within the officer's knowledge and of which (he) had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (arrested person) had committed or was committing an offense." *Beverly v. State*, 792 S.W.2d 103, 105 (Tex.Crim.App.1990)(citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), *Lunde v. State*, 736 S.W.2d 665, 667 (Tex.Crim.App.1987), and *Britton v. State*, 578 S.W.2d 685, 686 (Tex.Crim.App.1979)).

Courts have upheld the constitutionality of warrantless arrests when those officers initiate surveillance based on a tip and see behavior consistent with the illegal activity which is the subject matter of the tip. *See, e.g., Adkins v. State*, 764 S.W.2d 782, 785 (Tex.Crim.App.1988); *Delgado v. State*, 718 S.W.2d 718, 723–724 (Tex.Crim.App.1986). The Court of Criminal Appeals has repeatedly held that an arrest under TEX.CODE CRIM. PROC. ANN. art. 14.01(b) may be based on the officer's personal knowledge combined with personally observed behavior. *Beverly v. State*, 792 S.W.2d 103, 105 (Tex.Crim.App.

1990); *Miller v. State,* 458 S.W.2d 680, 683 (Tex.Crim.App.1970).

■ Reasor essentially argues that the only felony the officers saw him commit was possession of the cocaine, which they did not see until they had arrested him. This may be true; however, Texas law states only that an officer must have probable cause to effect a warrantless arrest under 14.01(b); "the standard is 'probable cause,' not 'proof beyond a reasonable doubt.'" *Delgado,* 718 S.W.2d at 720–721 (Tex.Crim.App.1986); *cf. Delgado,* 718 S.W.2d at 724 (Clinton, J., dissenting) (urging the reading of the statute Reasor endorses).

■ We find that the officers had probable cause to arrest Reasor; therefore the subsequent search of Reasor's vehicle, which revealed the first cache of white powder, was a search incident to a lawful custodial arrest. When a policeman makes a lawful custodial arrest of an occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). See also *Osban v. State,* 726 S.W.2d 107, 111 (Tex.Crim.App.1986), *overruled on other grounds by Heitman,* 815 S.W.2d at 690. Alternatively, since the uncontroverted testimony was that this evidence was in plain view, seizure was permissible under the plain view doctrine. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We therefore overrule Reasor's complaint as to the contraband found in his vehicle.

Our task is not yet completed, however. Although Reasor pleaded guilty to possession of cocaine 200–400 grams, the weight of the cocaine found in the truck was roughly 48 grams. We must therefore decide whether the cocaine found in the house was lawfully seized. This will turn on whether Reasor's consent to a search of his residence was freely and voluntarily given.

## WARRANTLESS SEARCH OF THE RESIDENCE

■ Consent to search, when freely and voluntarily given, is an exception to the search warrant requirement. *Johnson v. State,* 803 S.W.2d 272, 286 (Tex.Crim.App. 1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds by Heitman,* 815 S.W.2d at 690. Unlike the federal constitution, under which prosecutors must prove that consent to search was freely given by a preponderance of the evidence, under the Texas Constitution the state must prove by clear and convincing evidence that consent to search was freely given. *State v. Ibarra,* 953 S.W.2d 242, 244–245 (Tex.Crim.App.1997). For the consent to be voluntary, it must not be the product of duress or coercion, actual or implied. *Allridge,* 850 S.W.2d at 493. The burden to show voluntariness is not discharged by showing acquiescence to a claim of lawful authority. *Bumper,* 391 U.S. at 548, 88 S.Ct. 1788 (when peace officer represented that he had a valid search warrant when he did not, consent not voluntary).

■ Whether the consent to search was in fact voluntary is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Johnson,* 803 S.W.2d at 286. Whether the consenting person was in custody or restrained at the time are factors to be considered in whether consent was voluntarily given. *See Carpenter v. State,* 952 S.W.2d 1, 4 (Tex.App.—San Antonio 1997, *aff'd,* 979 S.W.2d 633 (Tex.Crim.App.1998). Moreover, "the display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent." *Lowery v. State,* 499 S.W.2d 160, 168 (Tex.Crim.App.1973).

■ Here testimony established that Reasor and his friend were arrested at gunpoint, by four officers, and handcuffed; that he was in custody and in handcuffs at the time consent was given; and that police already had searched his vehicle and seized contraband.

Further, Reasor contends that the "protective sweep" engaged in by the officers was illegal, further tainting his consent. We agree.

A protective sweep is defined as a quick and limited search of premises incident to an arrest and conducted to protect the safety of

police officers and others. *Maryland v. Buie,* 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The rationale is best understood as an extension of the *Terry* stop, which permits officers to commit a quick search for weapons to protect their safety. *Buie,* 494 U.S. at 331–333, 110 S.Ct. 1093 (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The court held:

> [as] an incident to arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Buie,* 494 U.S. at 334, 110 S.Ct. 1093.

██ Here prosecutors made no showing that the officers had "articulable facts" which led them to believe that there might be someone else inside the residence. In fact, one officer testified the arrest was made at Reasor's residence because they thought it would be safer. We therefore find that the officers were not justified in launching their "protective sweep." Although it disclosed no incriminating evidence, we believe the sweep is a further coercive factor tainting consent to search. *Cf. Green v. State,* 594 S.W.2d 72, 74 (Tex.Crim.App.1980) (where consent to warrantless search was given only after police, using passkey, attempted to enter motel room only to find door chained, later consent to enter not freely given).

The State argues that consent was indeed freely given because Reasor was not alone; he had a friend with him, although the friend was also in handcuffs at the time. Moreover, the state points out that after giving consent Reasor cooperated in showing the officers additional evidence. However, this cooperation is of lesser value in determining voluntariness of consent when highly coercive elements, such as drawn weapons, are present. *See* 3 Wayne R. LaFave, Search and Sei-

zure—A Treatise on the Fourth Amendment, § 8.2(g), at 680 (3d ed.1996). We do not believe this proffered evidence, even viewed in the light most favorable to the trial court's determination, rises to the level of clear and convincing evidence that Reasor's consent was freely and voluntarily given.

### Conclusion

We find that the officers had probable cause to stop and arrest Reasor. However, we find Reasor's consent to search his residence was fatally tainted. The coercive factors present when Reasor gave his consent— the display of weaponry, the fact that Reasor was under arrest and in handcuffs at the time, and the fact that police had already made one illegal intrusion into his residence—combine to thwart the state's attempt to show by clear and convincing evidence that Reasor's consent was freely and voluntarily given. We therefore find the trial court erred in not suppressing the fruits of the search of Reasor's residence. The judgment of the trial court is reversed in part and the cause remanded for proceedings consistent with this opinion.