FLOWERS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-179-CR

KIMBERLY VAN FLOWERS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

INTRODUCTION

Appellant Kimberly Van Flowers appeals his conviction for possession of a controlled substance, methamphetamine, greater than 4 grams but less than 200 grams.  Appellant filed a pretrial motion to suppress evidence seized based upon consent he claimed was involuntary and tainted by a previous illegal search.  After a hearing, the trial court denied his motion to suppress.  Appellant thereafter pleaded guilty and was placed on ten years’ deferred adjudication community supervision.  The trial court has certified that it granted permission to appeal and that Appellant has the right of appeal
.  See 
Tex. R. App. P.
 25.2(a)(2).  We affirm.

FACTUAL BACKGROUND

In the early morning hours of February 22, 2003, a Rhome police unit made a traffic stop of a car driven by Appellant’s girlfriend, Michelle Wallace. Because Michelle had outstanding warrants, the officer on the scene arrested her.  Appellant stopped on the opposite shoulder of the road and was watching the traffic stop, so the Rhome officer called for backup.  Officers Lanier and Stack of the Wise County Sheriff’s Department responded.  Michelle’s brother, Robert, was a passenger in the car with Michelle.  Because Robert’s driver’s license was suspended or expired, Officer Lanier gave him a ride to Appellant’s house.  It was disputed whether the idea to go to Appellant’s house was that of Officer Lanier or Robert. 

Officer Lanier knew Appellant and knew that Appellant had a felony warrant out of Parker County for his arrest.  He acknowledged that the purpose of his going to Appellant’s house was to arrest him.  When Officer Lanier arrived with Robert, Appellant was outside on his porch.  Officer Lanier told Appellant he was under arrest, handcuffed him, and placed him in the back of the squad car.  Robert went inside Appellant’s house. 

The facts are in dispute as to the events that followed.  Officer Lanier  asked Appellant if he wanted Robert to stay in the house or leave, and Appellant responded that Robert could stay, especially since he was Appellant’s  future brother-in-law.  According to Officer Lanier, Appellant asked him to tell Robert to lock the house if he left and that the keys were on the TV.  Officer Lanier testified he then went back to the front door with Appellant’s approval to explain to Robert to lock the house if he left.  

Officer Lanier recalled that the night was cool, but that Robert had left the front door open when he went in and only the screen door was closed.  Once on the front porch, Officer Lanier said, he looked through the screen, saw a glass pipe and some razor blades in clear view on a coffee table beside the couch, and noticed a strong smell he believed to be ether associated with a “meth house,” based upon his training and experience in the field.  Officer Lanier testified he did not enter the house at that time. 

Appellant denied asking Officer Lanier to speak to Robert, and testified there was no reason for Officer Lanier to say anything to Robert.  Both Appellant and Robert testified contrary to Officer Lanier that the front door and the screen door were closed when Officer Lanier returned to the front porch.  According to both Appellant and Robert, Officer Lanier opened the front door and walked in without knocking or asking permission to enter.  Robert testified he had closed the door when he entered and was lying on the couch when Officer Lanier walked in, and that Officer Lanier scanned the room with a flashlight and discovered the pipe in a wicker basket, not on the coffee table. 

Officer Lanier testified that, after seeing the pipe and razor blades on the table and noticing the smell of ether, he returned to the squad car and called Detective Hanks for assistance.  With Detective Hanks present, Officer Lanier told Appellant about the items he had seen along with the smell.  Officer Lanier and Detective Hanks then asked Appellant to give written consent to search the house, and it was undisputed that he agreed to do so.  The officers uncuffed Appellant and led him to the front of the squad car.  Appellant conceded that Officer Hanks gave him the 
Miranda
(footnote: 2) warnings and read him the consent form, which Appellant then signed.  Officer Lanier testified Appellant stated he wanted to cooperate and make it easier on himself, and, knowing that Appellant was a former police officer, Officer Lanier believed Appellant understood he could refuse.  The investigation was then turned over to the narcotics task force, which conducted a search and seized the contraband made the basis of the indictment and the subject of the motion to suppress.  

MOTION TO SUPPRESS

Appellant’s sole point, as framed by his brief, is that the trial court erred in ruling that his consent to the search and seizure was not tainted by Officer Lanier’s prior illegal entry into the house.

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we afford almost total deference to the trial court’s determination of the historical facts that the record supports, and application of the law to facts that turn on evaluation of the credibility and demeanor of a witness.  
Johnson v. State, 
68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002);
 Best
, 118 S.W.3d at 861-62.  We afford the same deference to the trial court’s rulings on mixed questions of law and fact if the resolution of those questions turns on the credibility and demeanor of a witness.  
Guzman, 
955 S.W.2d at 89.  However, we review 
de novo
 a trial court’s rulings on mixed questions of law and fact if they do not turn on credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.

It is the duty of the trial court to resolve conflicts in the testimony at a suppression hearing.  
Hawkins v. State
, 853 S.W.2d 598, 600 (Tex. App.—Amarillo 1993, no pet.).  When the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court’s ruling and assume the trial court made implicit findings of fact supporting its ruling, if such findings are supported by the record.  
Carmouche, 
10 S.W.3d at 327-28. 

Appellant cites 
Ex parte Peterson,
 117 S.W.3d 804 (Tex. Crim. App. 2003) arguing that we should use a single 
de novo
 standard of review because it cannot be determined from the record what the trial court’s implicit findings of fact are.  
Peterson
 held that “[a]lthough reviewing courts should also grant deference to ‘implicit factual’ findings that support the trial court’s ultimate ruling, they cannot do so if they are unable to determine from the record what the trial court’s implied factual findings are.”  
Id.
 at 819.  
Here, however, the trial court could have implicitly made one of two factual findings:  either Officer Lanier’s original discovery of the evidence did not constitute a “search” in the legal sense, and thus there was nothing to taint Appellant’s consent; or Officer Lanier’s initial discovery of evidence resulted from an illegal search, but that the search did not taint Appellant’s consent.  The determination of either fact required the trial court to resolve conflicts in the testimony by evaluating the credibility and demeanor of witnesses, because the testimony of Officers Lanier and Hanks differed markedly from that of Appellant and Robert.  Therefore, we conclude that the bifurcated standard of review applies.  And if the trial court’s decision is correct on any theory of the law applicable to the case, the decision must be affirmed.  
Ross, 
32 S.W.3d at 856.

B.  Application of Law to Facts
 

Appellant has not carried forward on appeal his contention in the trial court that his consent was involuntary; rather, he argues that Officer Lanier’s alleged entry and search of the house tainted his subsequent consent to the search and seizure of the paraphernalia and contraband. It is undisputed that Officer Lanier did not initially have a warrant to search Appellant’s house.  The Fourth Amendment to the United States Constitution provides that the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.”  
U.S. Const.
 amend. IV.  A warrantless search is
 
presumptively unreasonable under the Fourth Amendment.  
United States v. Karo
, 468 U.S. 705, 715, 104 S. Ct. 3296, 3303 (1984).

To justify a warrantless search, the State must show probable cause at the time of the search and the existence of exigent circumstances that made the procuring of a warrant impracticable.  
McNairy v. State
, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991); 
Beaver v. State
, 106 S.W.3d 243, 246-47 (Tex. App.—Houston [1
st
 Dist.] 2003, pet. ref’d).  A warrantless search may also be justified if it falls within a well-recognized exception to the warrant requirement.  
Katz v. United States
, 389 U.S. 347, 357, 88 S. Ct. 507 (1967); 
Best
, 118 S.W.3d at 862; 
see Walter v. State
, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) (recognizing “plain view” doctrine as such an exception); 
Davis v. United States
, 328 U.S. 582, 593, 66 S. Ct. 1256, 1261 (1946) (holding search with consent of suspect is an exception); 
Carmouche
, 10 S.W.3d at 327 (applying “plain feel” exception, citing
 Minnesota v. Dickerson
, 508 U.S. 366, 113 S. Ct. 2130 (1993)); 
Westfall v. State
, 10 S.W.3d 85, 88 (Tex. App.—Eastland 1999, no pet.) (applying “open fields” exception recognized in 
Oliver v. United States
, 466 U.S. 17, 19, 104 S. Ct. 1735, 1741-42 (1984)).

A “search” does not occur for Fourth Amendment purposes even within the protected area of a house, unless the individual manifested a subjective expectation of privacy in the object of the challenged search and society is willing to recognize that expectation as reasonable.  
Kyllo v. United States
, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042 (2001)
; Porter v. State
, 93 S.W.3d 342, 346 (Tex. App.—Houston [14
th
 Dist.] 2002, pet. ref’d) (op. on reh’g).  Absent orders from a person in possession of property not to trespass, anyone, including a police officer, has the right to approach the front door of a residence and knock on the door.  
Cornealius v. State
, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995)
.  

Under either Appellant’s or Officer Lanier’s version of the circumstances under which Officer Lanier approached the front door of Appellant’s house ostensibly to talk to Robert, Appellant expressed no objection.  He either verbally assented, according to Officer Lanier, or had no reason to say anything, according to Appellant.  Thus, Officer Lanier had a right to go back to the house after placing Appellant in the car to contact Robert about staying there or locking the door if he left.
  Cornealius
, 900 S.W.2d at 733-34; 
see Duhig v. State
, No. 14-03-01076-CR, 2005 WL 1979207, at *2 (Tex. App.—Houston [14
th
 Dist.] August 16, 2005, no pet. h.).   

Once rightfully at the front door, Officer Lanier was free to observe  evidence in “plain view.”  
Walter,
 28 S.W.3d at 541 (holding observation and even seizure of property in “plain view” involves no invasion of privacy); 
Swarb v. State
, 125 S.W.3d 672, 680 (Tex. App.—Houston [1
st
 Dist.] 2003, pet. dism’d); 
Duhig,
 2005 WL 1979207, at *3.  What a person knowingly exposes to the public, even in his/her own home or office is not a search that falls within the protection of the Fourth Amendment.  
Katz, 
389 U.S. at 351, 88 S. Ct. at 511.   

Evidence in the record supports an implicit finding that Officer Lanier’s actions prior to obtaining oral and written consent from Appellant did not constitute a search.  Officer Lanier testified that when he arrested Appellant and placed him in the back of the squad car, Appellant asked him to tell Robert, who was inside the house at that time, to lock up if he left.  Officer Lanier further testified that the front door was open and he merely observed the glass pipe and razor blades on a table and the smell of ether through the screen door.  These facts support a finding that Officer Lanier did not “search” Appellant’s house before obtaining consent, but merely observed the evidence while delivering a message to Robert on Appellant’s request.  

Appellant urges us to consider that no one corroborated Officer Lanier’s testimony and that his testimony was expressly contradicted by both Appellant and Robert.  Additionally, while Detective Hanks testified that Officer Lanier told him when he arrived that he had seen the pipe and razor blades on the table through the front door screen, he also recalled Officer Lanier telling him that he was “motioned” into the room by someone, and that Officer Lanier had walked in and found the pipe inside the house.  But he agreed he was not there when Officer Lanier discovered the pipe.  All he knew was what he was told by Officer Lanier and he could be incorrect.  He did not look through the screen door himself, but believed he recalled later seeing the pipe on the coffee table to the left of the couch when they went in after obtaining consent.  Finally, we note the testimony of Officer Picah, a member of the North Texas Narcotics Task Force that searched the house later that night, acknowledging that his report stated that Officer Lanier was “waved” in by the subject on the couch, but that that information was also related to him by Hanks.  Officer Picah also recalled that the glass pipe was laying on the table in plain view when he saw it, and he did not think it would be difficult to view the pipe from outside on the porch.  

Given that it is the trial court’s duty, and not ours, to resolve the conflicts in the testimony, and with appropriate deference to the trial court’s implicit findings of credibility, we conclude that the evidence supports the trial court’s implied finding that Officer Lanier did not “search” Appellant’s house prior to obtaining consent but, rather, saw the glass pipe and razor blades in “plain view” through the screen door.  Therefore, we further conclude that the trial court’s decision to deny the motion to suppress was correct on the theory that Officer Lanier’s actions were not an illegal search.  Thus, we need not consider whether those actions tainted Appellant’s consent.  We overrule Appellant’s sole point on appeal.

CONCLUSION

Because we hold the trial court did not err by denying Appellant’s motion to suppress, we affirm the trial court’s judgment. 

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  December 8, 2005

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).